# Philadelphia, Wilmington and Baltimore Railroad Co. *versus* Stinger.

1. Negligence is the absence of care, according to the circumstances.

2. It is the duty of an engineer approaching a highway, if danger is to be apprehended, to give warning by sounding the whistle, or other sufficient alarm; the failure to do so is negligence *per se*, to be determined by the court.

3. The court is to decide the question of negligence, where the precise duty is determinate and the same under all circumstances.

4. A wanton, unnecessary sounding of the whistle is negligence.

[Philadelphia, Wilm. & Balt. Railroad Co. *v.* Stinger.]

5. A railroad company having a chartered right to propel their cars by steam, are not responsible for injuries resulting from the proper use of such agency.

6. Whether alarming a horse and causing an accident by a rapidly-moving train, or sounding a whistle, will make the company liable for damages, depends upon whether it was from want of proper care in those in charge of the train.

7. What would be due care in running a train through a sparsely settled rural district might be negligence in approaching a large city.

8. A train was passing through a city on a railroad which had a number of short curves, so that persons could see the train but for a short distance; it was crossed by several streets and passed over a river on a drawbridge; the rule of the company required that the whistle should be sounded about a certain point, to warn the bridge-tender and persons about to cross at other streets. *Held*, the use of the whistle at that point in the ordinary manner was not negligence.

9. If the whistle had not been sounded at such point and one had been injured by reason of the omission, it would have been negligence *per se.*

10. One driving an unbroken or vicious horse, or one easily frightened by a locomotive, along a public road running side by side with a railroad, does so at his own peril; the right of the company to move their trains on their road is as high as that of the individual to use the public road.

11. Frankford & Bristol Turnpike Co. *v.* Philadelphia & Trenton Railroad Co., 4 P. F. Smith 345, adopted.

March 31st 1875.  Before AGNEW, C. J., SHARSWOOD, WILLIAMS, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Error to the District Court of *Philadelphia:* Of July Term 1873, No. 9.

This was an action on the case, brought to September Term 1871, of the court below, by Daniel Stinger against the Philadelphia, Wilmington and Baltimore Railroad Company.

The declaration was, that the plaintiff was driving his horse and wagon in which he was riding, on Gray's Ferry avenue in the city of Philadelphia, alongside of which the defendant's railroad was located; that the defendant's servant, in propelling a locomotive on their railroad, "made such great noise and shrieks by blowing a whistle connected with the locomotive, that by and through the carelessness, negligence and improper conduct of the defendants, by their said servant in that behalf, the plaintiff's horse was startled and scared, became unmanageable and ran away, and plaintiff was thrown from his wagon under the wheels thereof, and was run over by them;" was greatly injured, &c.; was hindered from attending to his business, and had to expend a large sum of money in endeavoring to be healed, &c.

The track of defendant's road from their depot runs along Washington avenue to a point opposite the United States arsenal, on the west side of the Gray's Ferry road, between Twenty-sixth and Twenty-seventh streets; it there turns and runs westwardly, parallel with that road, to the railroad over the Schuylkill river. The road in this space makes a curve at the arsenal, another just east of Twenty-eighth street, a third half a square beyond Thirty-first street; the curves are so decided that the road can be seen

but a short distance beyond them.    Between Twenty-eighth street and the river there are four road-crossings over the railroad, one near Thirtieth street, another at Thirtieth street, one at Thirty-second street, one at Newport or Thirty-third street, the bridge being about three squares from Thirty-third street; the bridge and the crossings at Thirty-second and Thirty-third streets cannot be seen until the curve beyond Thirty-first street has been passed. The bridge is a draw-bridge, at each end of which a watchman is stationed to flag the trains, after the whistle has given him notice of their approach.

. The rule of the company and custom of the engineers were to ring the bell until the engine had passed beyond the thickly-built parts of the city, and afterwards to use the whistle alone to warn persons about crossing the railroad at the before-mentioned streets, and the watchman at the bridge.

The case was tried February 17th 1873, before Lynd, J.

The plaintiff testified: " On the 27th of June 1871, I was returning from market; when opposite the arsenal I stopped to see if any train was coming down the avenue; I thought I could make it home before any engine would come, and kept on; between Thirty and Thirty-first street an engine opened a great blast; it frightened my horse; he started to run away; I stepped out to get him by the head, and they blew again, and I fell under the wagon between the wheels.    It was because the second blast started the horse; if it had not been for the second blast he would have stopped; the engine was going west, the same direction as I was—behind me."

Witness then described the extent of his injuries.

On cross-examination, he said: " The horse had a fashion of turning sharp around, but was quiet when got by the head. * * * I drove the horse daily for two or three months before; he was always afraid when the whistle blew.    I always got notice of the approach of the train, and got out and stood by his head."

. Other witnesses of plaintiff who saw the occurrence testified much as the plaintiff had done.

One witness said the horse started and ran at the first blast of the whistle, which was at Twenty-eighth street, and seemed to be more frightened than any horse he ever had seen; the second blast was at Thirtieth street.

Another testified that he saw Stinger tumbling out after the first blast, but could not say how many whistles he heard.

Another witness testified that the horse was a young horse and afraid of a locomotive.

For the defendants, the engineer of the train testified that he blew the whistle first at Twentieth street, then at Thirtieth street; it was blown but once after passing Twenty-eighth street.    The rules were to blow at Twentieth and Thirtieth streets; when he saw

[Philadelphia, Wilm. & Balt. Railroad Co. *v.* Stinger.]

a space where there were no carriages he blew a short whistle, just east of Thirtieth street; he blew when he came to an opening, as was the practice; it was a signal whistle ; he had not blown twice.

On cross-examination, the witness said that they did not at the time of the trial blow a whistle at Thirtieth street.

Several of the hands on the train testified that the whistle was blown but once after leaving Twentieth street; the custom was to blow a whistle near Thirtieth street, " using judgment in regard to carriages."

Another witness testified that at the time of the accident there were but few houses in that locality ; since that time the number had much increased ; after this increase an order was issued by the defendants that the whistle should not be blown between Twenty-eighth street and the bridge; and the bell only was rung; it is important to give a signal to the bridge; ringing a bell is very inadequate for that; the bridge is at Thirty-sixth street; the whistling was stopped because the traffic has increased.

The following are points of the defendants, and their answers by the court:—

2. The defendants, being authorized to use steam-engines upon their railroad alongside Gray's Ferry road, in the city of Philadelphia, for the purpose of moving their trains, are not responsible for accidents arising from fright to horses occasioned by the noises incident to the employment of such engines.

Answer : " Just as that point is worded I cannot affirm it; with a slight alteration I could, in this way: That the defendants being authorized to use steam-engines upon their railroad alongside Gray's Ferry road, in the city of Philadelphia, for the purpose of moving their trains, are not responsible for accidents arising from fright to horses, occasioned by noises *necessarily* incident to the *careful* employment of such engines.

" You will consider if the blowing of a whistle is a *necessary* incident of the movement of trains. I leave it to you to say as a question of fact. I do not choose to treat it as a matter of law. You will consider whether the train could have been moved without a steam-whistle, as a matter of fact; the best evidence of that is, that some time since this occurrence, the company has discontinued whistling at that place. Noises must be necessarily incident to the careful movement of trains, but trains make different noises. A long train moving at a rapid rate of speed makes noise if no whistle be used. Still, if it were alleged that a train was moved with great rapidity, more care would be required, and it may well be, if movement of a train rapidly makes much noise, and a horse was started by the noise, that it would be negligent if the train made more noise than a careful use of the train required."

3. Unless the evidence shows that the defendants' servants, in charge of the engine running upon their track alongside of Gray's

[Philadelphia, Wilm. & Balt. Railroad Co. *v.* Stinger.]

Ferry road, were exercising their right to use and move such engine in an extraordinary way, and without due and reasonable care, no negligence can be imputed to them in this respect, and the defendants are not liable for the accident which happened to the plaintiff.

Answer: " I affirm that just as it is written, but it still comes back to the starting-point, whether the blowing of the whistle *there* was not using the engine in an extraordinary way."

4. There is no evidence in the case of want of ordinary care on the part of the defendants, and the verdict should, therefore, be for the defendants.

Answer: " I decline so to charge you; the question will be for you."

6. If the jury believe that the plaintiff drove a horse which, according to his own testimony, became easily frightened at locomotives, it was negligence on his part to drive such horse alongside Gray's Ferry road in close proximity to the defendants' railroad; and if the horse, while being so driven, became frightened by an engine, he cannot recover.

Answer: " I decline so to charge you. The law will not banish horses from highways because locomotives cross or traverse them. The effect of a man having a horse liable to fright from a locomotive would be, to require him to use a greater degree of care. It would impose a duty upon him not to bring the horse in contact with an engine unnecessarily; but here there was no other road. The law does not compel a man to go out of his way a mile or more, even to avoid such a danger. He must be more watchful. You must remember what I said about contributory negligence in the management of his own horse. If he approach a railroad with such a horse, he ought to look out for trains. If he saw a train, it would impose the duty on him to keep out of the way, or, if overtaken on the route, and he should find that the locomotive was upon him, he should get out and hold the horse by his head; but it is not contributory negligence in itself to go there with such a horse. It did impose a greater degree of caution."

The court charged also : " Negligence, among other things, consists in doing that which a man of ordinary caution would not do under the circumstances. I need not further define negligence with a view to your conclusions in this case. [The question in this case is, whether this engineer, in sounding the steam-whistle, under the circumstances, did that which a man of ordinary prudence and consideration for his fellows would not have done.] You will take into view all the circumstances; what a steam-whistle is, what a noise it makes, the alleged nearness of the wagon and [the alleged excited condition of the horse. If the horse was really running away, and the locomotive was overhauling it, and within fifty feet, and then blew, you will consider if the engineer did what a pru-

dent and careful man would have done when he blew the whistle.]
If he did, your verdict should be for the defendants. If an ordi-
narily careful man would not have done it, your verdict should be
for the plaintiff, unless you find the plaintiff guilty of negligence.
The plaintiff, to recover, must show that not only the act of the
engineer was negligent, assuming his act occasioned the injury, but
also that he himself was not negligent in bringing his horse where
he was and in his attempts to control him. The law does not per-
mit one to recover if he has been negligent himself. You will
consider if the plaintiff, when he jumped out, did as an ordinarily
cautious man would have done ; whether a careful man would have
stuck to the wagon or not. He says he jumped off voluntarily.
If he was knocked off there would be no ground to charge him
with negligence; otherwise, if he voluntarily jumped off. The law
imposes the obligation to use judgment in such a case; you will,
therefore, consider if plaintiff was guilty of negligence. If you
find that, no matter how negligent defendants were, your verdict
should be for the defendants. * * *

The verdict was for the plaintiff for $1600.

The defendants took a writ of error ; they assigned for error :—
1, 2. The parts of the charge in brackets.

3-6. The answers to defendants' 2d, 3d, 4th and 6th points, re-
spectively.

*J. E. Gowen* (with whom was *T. Hart, Jr.*), for plaintiffs in
error.—The use of the steam-whistle is not negligence *per se:*
Wharton on Negligence 676, sects. 386, 898 ; Shearman on Negli-
gence, sect. 486, note 1. A company is not liable for accidents
from fright of horses, occasioned by escape of steam, ringing bells,
whistling, &c.: Burton *v.* Phila., W. & B. Railroad, 4 Harrington
252; Bordentown *v.* Camden & Atlantic Railroad, 2 Harrison 314;
King *v.* Pease, 4 B. & Ad. 30; Railway *v.* Fullerton, 4 C. B. N.
S. 54.

*M. A. Dropsie*, for defendant in error.—The question of negli-
gence is for the jury and not for the court: Huyett *v.* Phila. &
Reading Railroad Co., 11 Harris 374 ; McCully *v.* Clarke & Thaw,
4 Wright 408 ; Lackawanna & Bloomsburg Railroad Co. *v.* Doak,
2 P. F. Smith 381. Questions of skill, vigilance, care and proper
management in any business, are necessarily questions of fact and
are to be referred to a jury : Frankford & Bristol Turnpike Co. *v.*
The Philada. & Trenton Railroad Co., 4 Id. 350.

Mr. Justice PAXSON delivered the opinion of the court, May
10th 1875.

This case presents two questions: The first is whether the en-
gineer of the train was guilty of negligence in blowing the alarm

whistle; the second, whether the plaintiff below was chargeable with contributory negligence in driving a horse admitted by him to be afraid of the cars, upon Gray's Ferry road, alongside of the railroad, at the time in question.

Negligence has been defined to be the absence of care, according to the circumstances: Turnpike Co. v. The Railroad Co., 4 P. F. Smith 345. In some cases, the blowing of the steam-whistle of a locomotive has been held to be negligence; in others, the omission to do so has been treated as negligence. Yet there is no want of harmony between these apparently conflicting decisions. The character of the act depends upon the circumstances accompanying it. Thus, it is clearly the duty of an engineer, when his train approaches a public highway, if danger is to be apprehended, to give warning by sounding the whistle, or other sufficient alarm. The failure to do so would be negligence *per se*. For while negligence is usually a question of fact for a jury, there are some cases in which a court can determine that omissions constitute negligence. They are those in which the precise measure of duty is determinate; the same under all circumstances. Where the duty is defined, a failure to perform it is of course negligence, and may be declared by the court: McCully v. Clarke, 4 Wright 406. On the other hand, the wanton and unnecessary sounding of the whistle has been held to be negligence. The Penna. Railroad Co. v. Barnett, 9 P. F. Smith 259, illustrates both of the views suggested. In that case, the engineer of the train, having given no notice of its approach, blew his whistle under a bridge whilst a traveller was passing over it, by means whereof his horse took fright, ran off, and injured him. It was held, that the omission to give notice by whistling, or other signal, of the approach of the train to the bridge, as well as the blowing of the whistle while the engine was *under* the bridge, there being no apparent necessity therefor, was properly left to the jury as evidence of negligence.

The plaintiffs in error, having a right under their charter to propel their cars by the use of steam, are not to be held responsible in damages for injuries resulting from the proper use of such an agency. It was held, in The Turnpike Co. v. The Railroad Co., before cited, that a loss of property adjacent to a railroad from the sparks of a locomotive, apart from misuse, is *damnum absque injuria*. It was said by the present Chief Justice, in delivering the opinion of the court in that case: "The law in conferring the right to use an element of danger, protects the person using it, except for the abuse of his privilege." It may, therefore, be safely assumed, that the company are not liable for injuries resulting from the use of their cars where due care is exercised. The noise of a rapidly-moving train, as well as the sound of the whistle, may alarm a horse, and cause an accident; whether such accident imposes a liability upon the company to make compensation in

28 P. F. SMITH—15

[Philadelphia, Wilm. & Balt. Railroad Co. *v.* Stinger.]

damages, must depend to a great extent upon the fact whether it was the result of a want of proper care on the part of the persons in charge of such train.

What is proper care cannot be determined by any fixed rule of law. It must depend upon the facts of the particular case. That which would be due care in running a train through a sparsely settled rural district, might be negligence, if not actual recklessness, in approaching a large city. The steam-whistle is one of the recognised methods of signalling the approach of a train. Its universal use upon railroads is a strong argument in favor of its efficiency. It is shrill and piercing; can be heard for a great distance, and can be mistaken for nothing else. Yet it has its disadvantages. More than all other sounds, it is a terror to animals unaccustomed to its warning. Where trains are passing through the built-up portions of towns and cities, it is not needed, nor often used. In such cases they move slowly, and the ringing of a bell sufficiently answers the purposes of an alarm, and is not so likely to frighten horses. But where it is necessary to warn crossings or bridges at a distance in advance of the train, no sufficient substitute has yet been found for the whistle. It can be heard in any condition of wind and weather. In the absence of the discovery of any suitable substitute, and in view of its use upon all roads operated by steam, the mere fact of the whistling furnishes no presumption of negligence. Was the whistle used in such a wanton manner as to amount to negligence? The learned judge left this question to the jury. And in so far he was right. But he also left it for the jury to decide whether the use of the whistle at all in that particular place, was negligence. The train had passed beyond the closely built-up portions of the city, which ended at Twenty-eighth street, and there were but few houses between that point and Gray's Ferry bridge. The engineer whistled about Thirtieth street. The plaintiff says he whistled twice; that the first whistle frightened his horse, and it commenced to run; that just as he was getting it under control, there was a second "blast" from the whistle, and his horse then became unmanageable, threw him out, and the wagon passed over him. Gray's Ferry road and the railroad at this point are side by side. The train and the plaintiff were going in the same direction, and at the moment when the accident occurred the train had nearly overhauled him. It was a disputed fact whether the whistle was sounded once or twice in this vicinity. The conductor, engineer and fireman of the train, and other witnesses for the company, testify that there was but one whistle west of Twenty-eighth street. Nor is the plaintiff sustained by all of his own witnesses as to the second whistle.

If the court below had left the jury to find negligence from the use of the whistle the second time, if they believed it to have been

so used, provided the engineer saw, or with proper care might have seen the plaintiff's wagon, and that his horse was becoming unmanageable, there would have been no error. But he submitted the case to the jury in such a way as left them at liberty to find negligence from the use of the whistle once at or about Thirtieth street. It must be borne in mind that the Philadelphia, Wilmington and Baltimore railroad runs along Washington avenue, in this city, until it reaches a point opposite the United States arsenal, situate on the west side of Gray's Ferry road, between Twenty-sixth and Twenty-seventh streets. It then turns, enters upon the company's grounds alongside of the Gray's Ferry road, and runs parallel with that road a short distance from it, and several feet above its grade, to the bridge over the Schuylkill river. The road makes several curves; one at the arsenal, another just east of Twenty-eighth street, and the third half a square beyond Thirty-first street. These curves are all so decided that the road can be seen for a short distance only beyond them; the Gray's Ferry bridge and the last two road-crossings being invisible until the last curve has been passed, a point above Thirty-second street. Between Twenty-eighth street and the Schuylkill there are four road-crossings over the railroad, the bridge being about three squares beyond the last crossing. The bridge is a draw-bridge, a watchman being stationed at each end, for the purpose of flagging the trains, upon being warned by the whistle of their approach. It was the daily practice to blow the whistle at Thirtieth street. The rules of the company require it. We have seen that there were several crossings, as well as the bridge-tender, to be warned of the approaching train. They were invisible by reason of the curves. The engineer had the right, under the circumstances, to blow the whistle in the vicinity of Thirtieth street, sufficiently to give notice of the approach of the train. Its use once, in the ordinary manner, was not evidence of negligence, and it ought not to have been submitted to the jury as such. On the contrary, had he omitted to give such warning, and by reason thereof the plaintiff had been struck and injured by the train, we should have been compelled to say, under the authority of our own cases, that such omission was negligence *per se*.

It was urged that any use of the whistle at this point was unnecessary, and the fact that it has since been abandoned, was stated as strong evidence in support of this view. The abandonment, however, was doubtless due in a great measure to the changed circumstances. This locality has been much improved since 1871, and there are many more houses there now than formerly. We have held these corporations to a strict line of responsibility for the failure to give sufficient warning of the approach of their trains at road-crossings. It would not be just to them, nor safe to the travelling public, for us now to criticise too closely the

[Philadelphia, Wilm. & Balt. Railroad Co. *v.* Stinger.]

precise amount of noise employed in giving the needed warning at such places, or the means of producing it.

There was also error in the answer of the learned judge to the defendant's sixth point. It is true, the law will not banish horses from the highways. It is equally clear that the plaintiff had a right to drive the horse referred to, or any other horse, however vicious, upon the Gray's Ferry road, at this particular point of danger. We are not dealing with the absolute rights of the parties. The question here is one of prudence and care. When a man drives an unbroken or vicious horse, or one that is easily frightened by a locomotive, along a public road running side by side with a railroad, and liable to be met or overtaken by a train, he does so at his own risk. It is an act amounting to recklessness. That there was no other road for the plaintiff to use, does not matter. There were other horses which he might have procured for use in such a dangerous locality. Duties and obligations are mutual. The railroad company had as high a right to move their trains upon their road as the plaintiff had to drive his horse along Gray's Ferry road. Both were bound to the exercise of care in accordance with the circumstances of the case.

We do not lose sight of the fact that, in such questions as this, the interests of other parties are concerned. The right of a man to risk his own life, and that of his horse, may be conceded; but not the right, by an act of negligence, if not of recklessness, to place in peril the lives of hundreds of others who may happen to be travelling in a train of cars.

What we have said, disposes of the third and sixth assignments of error. The remaining assignments are carved out of the two just mentioned, and do not need more specific notice.

The judgment is reversed, and a *venire facias de novo* awarded.