# Black *v.* Bessemer & Lake Erie Railroad Company, Appellant.

*Negligence—Railroads—Overhead crossings—Duties as to signals.*

A railroad company is not bound by any unbending rule of law to ring a bell or blow a whistle as a train approaches an overhead crossing.   Penna. Railroad Co. v. Barnett, 59 Pa. 259, distinguished.

When the risks and dangers of crossing at grade have been avoided by the construction of an overhead crossing at the expenditure of a large sum of money, it would be unreasonable to make an imperative unbending rule requiring the performance of duties demanded as a protection where the danger is greater, as at a grade crossing.

Where a traveler approaching an overhead crossing has a clear view of the railroad for a distance of nearly 1,500 feet in the direction from which a train is coming, the railroad company is under no imperative duty to him to signal the approach of the train by blowing a whistle, or ringing a bell.

*Negligence—Contributory negligence—Railroads.*

In an accident case, if the testimony does not disclose negligence on the part of the defendant, there can be no recovery ordinarily, no matter how free from negligence the facts show the plaintiff to be.

Argued Oct. 13, 1906.   Appeal, No. 16, Oct. T., 1906, by defendant, from judgment of C. P. Mercer Co., Oct. T., 1906, No. 6, on verdict for plaintiff in case of Joseph Black v. The Bessemer & Lake Erie Railroad Company.   Before MITCH-ELL, C. J., FELL, BROWN, POTTER and ELKIN, JJ.   Reversed.

Trespass to recover damages for death of plaintiff's wife. Before MILLER, P. J.

At the trial it appeared that on December 2, 1903, plaintiff's wife, and her father, Anson Curry, were driving in a one-horse buggy on a public road which crossed under the defendant's railroad. As they approached the crossing they had a clear view of the railroad for a distance of nearly 1,500 feet in the direction from which a train was coming. When under or near the crossing the horse took fright, and Mrs. Black was thrown out, and received injuries from which she died a few days afterwards. There was no evidence that a signal was given by the blowing of a whistle or the ringing of a bell.

Defendant presented these points :

1. The court is requested to instruct the jury that the evidence in this case shows so clearly and conclusively that a locomotive on the railroad at any point between the crossing and a distance, say 1,000 feet, west of the crossing, was plainly visible from every part of the public road from the opening of the crossing for 300 feet or more back in the direction from which Mr. Curry and Mrs. Black were driving, there can be no doubt of the ability of the two occupants of the buggy to have seen the locomotive if they had looked, and, therefore, there can be no recovery in this case. *Answer :* Refused. [1]

2. That under all the evidence in this case there can be no recovery. *Answer :* Refused. [2]

Verdict and judgment for plaintiff for $3,000. Defendant appealed.

*Errors assigned* were (1, 2) above instructions quoting them.

*Q. A. Gordon,* with him *Templeton, Orr & Whiteman,* for appellant.

*S. S. Mehard,* with him *W. J. Whieldon,* for appellee, cited : Penna. R. R. Co. v. Barnett, 59 Pa. 259.

OPINION BY MR. JUSTICE ELKIN, January 7, 1907 :

The negligence complained of in the statement of claim is that the engine was "running at a very high rate of speed and making great and frightful noises," and that notice of the approach of the train to the crossing was not given "by the ringing of the engine bell or the blowing of the whistle." The testimony produced at the trial failed to show that the engine

was running at a high or unusual rate of speed, or that the train was making "great and frightful noises," nor were any facts proven that would warrant a submission of this question to the jury. This feature of the case was not pressed in the court below, and is not insisted on here. The testimony showed that the train was running at from fifteen to eighteen miles an hour, a very moderate rate of speed, so that we may safely dismiss this allegation from further consideration. The whole case of appellee is based on the allegation that no bell was rung nor was any whistle blown at a proper place before the train reached the crossing. Whether these signals were given was a disputed question of fact at the trial, but, it must be conceded, if it is held to have been the duty of appellant to give them, there was sufficient testimony to submit to the jury in order to determine the fact. Was it the duty of appellant to ring a bell or blow a whistle as the train approached the crossing? The rule is settled that such duty is imposed on railroad companies at grade crossings. Does the same rule apply to overhead crossings? If so, the judgment entered in the court below should be affirmed; if not, there can be no recovery under the facts of this case. The rule as applied to grade crossings was based upon a humane public policy intended as a protection to the lives, limbs and property of travelers, not only on the highways but on the railroads as well. The dangers of crossing at grade were great, and the standard of care required to avoid these dangers was correspondingly great. In order to avoid, as far as possible, the dangers of collision in such cases, the courts have established the rule not to permit a grade crossing unless the physical conditions are such as to leave no alternative by the construction of an overhead or underground crossing. The railroad companies by the expenditure of vast sums of money are rapidly abolishing them and in this laudable work should be encouraged. When, therefore, the risks and dangers of crossing at grade have been avoided by the construction of an overhead crossing, it would be unreasonable to make an imperative unbending rule requiring the performance of duties demanded as a protection where the danger is greater. In P. W. & B. Railroad Co. v. Stinger, 78 Pa. 219, it was held that failure to ring a bell or blow a whistle in approaching a grade crossing was negligence per se. This is the settled rule of our cases. In our opinion, however, no

such imperative duty is required at overhead crossings, because in such cases the dangers are not so great and the object of giving the signal is different. At a grade crossing the object of requiring the signals to be given is to avoid a collision, while at an overhead crossing the only purpose to be served by blowing a whistle is to give notice to travelers on the highway so that they may keep out of the zone of danger. The learned counsel for appellee relies on Penna. Railroad Company v. Barnett, 59 Pa. 259, as ruling this question in his favor. It was held in that case that wherever danger may result to persons rightfully traveling on a public road which crosses the tracks of a railroad, whether at grade, or over or under the same, it is the duty of the railroad company to give notice of the approach of its trains by proper signals. That case, however, must be understood in the light of its own facts. The cause of the accident there was not a failure to blow the whistle before reaching the crossing, but whistling as the train went under the bridge whilst a traveler was passing over it, by means of which, his horse was frightened, ran off, and injured him. The testimony showed that the accident was caused by blowing the whistle as the train passed under the bridge and this was sufficient to submit to the jury to determine the question of the defendant's negligence without any reference to the allegation that the alarm signals were not given before the train reached the crossing. It is apparent that the question of the failure to give these signals in that case was introduced, not for the purpose of showing such negligence on the part of the defendant as would warrant a recovery, but to excuse the alleged contributory negligence of the plaintiff in not stopping his team before going over the bridge and waiting until the train had passed. On the east side of the public road, the direction from which the train was coming, there was a hill which obstructed the view for a distance of seventy-four rods from the railroad to within six rods of it, so that the traveler could not see the approaching train during all that distance, nor until within a few rods of the tracks. For this reason and under the circumstances of that case the trial judge charged the jury in determining under all the facts whether the company was guilty of negligence, they should take into consideration the relative position of the public road and the railroad at or near the cross-

ing ; the likelihood and facility of a traveler to discover an approaching train ; and further taking into consideration the fact that trains approaching from the east would not be seen from a point at a safe distance from the bridge, whether it was the duty of the engineer to give notice of the approach of the train so as to put the traveler on his guard. Even in that case it seemed to be conceded that if the traveler could have seen the train at a safe distance from the crossing, there was no imperative duty resting on the railroad company to give him notice. We doubt if that case would have been affirmed if the only negligence proven was the failure to give notice of the approach of the train, but this fact under all the circumstances of that case, and, the additional and material fact, the blowing of the whistle under the bridge while the horse was passing over it, were submitted to the jury to determine whether the defendant had been guilty of such negligence as to make it liable in damages. In the present case the same rule might be applicable, if in point of fact the horse had been frightened by blowing a whistle as the train passed over the crossing, but this important fact does not appear. Again, it must be observed that as Curry approached the crossing, driving his horse, he had a clear view of the railroad for a distance of nearly 1,500 feet in the direction from which the train was coming. He could see for himself whether a train was in view and did not need to rely on danger signals to give him notice of the fact. It was as much his duty to keep a lookout for the train as it was for the appellant to give notice of its approach even at a grade crossing. At an overhead crossing the purpose of blowing a whistle is to give the traveler notice of the approach of the train, in order that he .may avoid danger, but if he had within himself, by his own sense of sight, with an unobstructed view, the opportunity to observe, and failed to do so, appellant ought not to be convicted of negligence in failing to do for him what he failed to do for himself. It would be a strange rule to convict appellant of negligence for failure to give notice, and, at the same time, excuse the appellee from his duty to take notice, when both parties had equal opportunities for observing the situation and both were required to exercise reasonable care under the circumstances. The case was presented in the court below and has been argued here almost entirely on the question of contributory negligence. In

this connection it should be observed that the first and primary question to be considered in every such case is the negligence of the defendant. The contributory negligence of the plaintiff is predicated upon and presupposes the negligence of the defendant. If the testimony does not disclose negligence on the part of the defendant there can be no recovery, no matter how free from negligence the facts show the plaintiff to be : Hanna v. Phila. & Reading Railway Co., 213 Pa. 157. In the present case the facts proven at the trial did not show any such negligence as would make the appellant liable in damages for the injuries sustained and it is the duty of the court to say there can be no recovery.

Judgment of the court below reversed and is here entered for appellant.