# Commonwealth ex rel., Appellant, *v.* Philadelphia, Harrisburg & Pittsburg Railroad Company.

*Boroughs — Railroads — Ordinance — Watchman at crossing — Police powers.*

It is a reasonable exercise of the police power of a borough to pass an ordinance requiring a railroad company to keep a watchman at its own expense at a dangerous crossing within the borough limits; but where a crossing is practically in the open country, and there is no evidence to show to what extent it is frequented, such an ordinance cannot be sustained.

206 COMMONWEALTH, Appellant, *v.* RAILROAD CO.

Statement of Facts—Opinion of Court below. [23 Pa. Superior Ct.

Argued March 10, 1903. Appeal, No. 17, March T., 1903, by plaintiff, from judgment of C. P. Cumberland Co., Sept. T., 1901, No. 124, for defendant non obstante veredicto in case of Commonwealth ex rel. Borough of Mt. Holly Springs v. Philadelphia, Harrisburg & Pittsburg Railroad Company. Before BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ. Affirmed.

Appeal from judgment of burgess. Before BIDDLE, P. J.

The court charged as follows :

By consent of the parties we will take in each of the cases which you have been sworn to try a verdict in favor of the plaintiff for the sum of $32.50, with interest from June 28, 1901, subject to a future disposition of the two following reserved questions of law :

1. Had the plaintiff lawful power to pass and enforce the ordinances which are respectively the basis of the present suits ?

2. If the above question should be answered in the affirmative, then comes the further question : Are said ordinances reasonable ?

On rule for judgment, EDWARD W. BIDDLE filed the following opinion :

In D., L. & W. R. R. Co. v. East Orange, 41 N. J. Law, 127, the right of a municipality to compel a railroad company to place a flagman at a crossing was sustained, there being a special act of the legislature authorizing the municipality to do so ; no case has been cited to us, however, upholding such an exercise of power without an express legislative grant. In T., W. & W. Ry. Co. v. City of Jacksonville, 67 Ill. 37, the court waived a ruling upon the question of implied power, and held the ordinance to be invalid because it was unreasonable.

There is no act of assembly conferring authority upon plaintiff to adopt the ordinances before us and it is not within its implied police powers to do so, therefore the ordinances are void (Millerstown Borough v. Bell, 123 Pa. 151), and the first reserved point must be answered in the negative. A similar decision by Judge GUNSTER is reported in Borough of Archbald v. D. & H. Canal Co., 3 Lackawanna Jurist, 189.

The ordinances must also be rejected on the ground that they are unreasonable. Neither of the crossings therein referred to is within the built-up portion of the borough, and neither is so located as to warrant the unusual precaution of having a flagman stationed at it. The one at the north end of the town is not more hazardous than the average railroad crossing, and whilst the one at the south end presents some additional features of danger, these are not of such an exceptional character as to justify the action of council.

And now, March 18, 1902, both of the reserved questions of law are determined in favor of the defendant, the verdicts are set aside, and it is ordered that judgment be entered in each case in favor of the defendant non obstante veredicto upon payment of the jury fees.

*Error assigned* was in entering judgment for defendant non obstante veredicto.

*R. W. Woods*, for appellant.—The borough had the power to pass the ordinance : New Hope Borough v. Postal Tel. Cable Co., 202 Pa. 532.

This court and the Supreme Court are loath to annul an ordinance and are disposed to leave the question of reasonableness with the borough council for many of the questions are of a practical nature, and the town council and burgess are better able to judge than the courts: North Braddock Boro. v. Traction Co., 8 Pa. Superior Ct. 233 ; North Braddock Boro. v. Telegraph Co., 11 Pa. Superior Ct. 24 ; Wilkes-Barre v. Garabed, 11 Pa. Superior Ct. 355 ; New Hope Borough v. Telegraph Co., 16 Pa. Superior Ct. 306 ; Philadelphia v. Brabender, 17 Pa. Superior Ct. 331 ; O'Maley v. Borough of Freeport, 96 Pa. 24 ; Allentown v. Telegraph Co., 148 Pa. 117 ; Allegheny City v. Gas Company, 172 Pa. 632 ; Springfield Water Co. v. Boro. of Darey, 199 Pa. 400.

*C. Hambleton*, of *Wetzel & Hambleton*, for appellees.—The borough had no power to require railroad companies to maintain flagmen at crossings within the borough: Millerstown Boro. v. Bell, 123 Pa. 151 ; Archbald Boro. v. Del. & Hudson Canal Co., 3 Lackawanna Jurist, 189 ; Ravenna v. Pennsylvania Co., 45 Ohio, 118 (12 N. E. Repr. 445).

There is no common-law duty upon a railroad to station flagmen at public crossings irrespective of circumstances : P. & R. R. R. Co. v. Killips, 88 Pa. 405 ; Penna. R. R. Co. v. Matthews, 36 N. J. 531.

The reasonableness of an ordinance is always for the court and never for the jury : Kneedler v. Norristown, 100 Pa. 368 ; Livingston v. Wolf, 136 Pa. 519 ; Commissioners v. Gas Co., 12 Pa. 318.

OPINION BY ORLADY, J., May 22, 1903 :

The argument of this case was confined by counsel to two legal propositions : First. The validity of an ordinance of the plaintiff borough which requires the defendant company to provide, at its own cost and expense, at a point in the borough where the defendant railroad company's tracks cross the public street or avenue, a watchman or flagman whose duty would be to warn persons traveling on said avenue of the approaching trains, cars and engines on the railroad tracks. Second. The reasonableness of such an ordinance, requiring the railroad company to keep a watchman at a crossing in the borough, and which provides for a fine of $2.50 for each day that said crossing is not guarded by a watchman.

The borough of Mount Holly Springs was incorporated by an act of assembly, April 10, 1873, P. L. 610, and is subject to the provisions of the general borough law of April 3, 1851, P. L. 320, under which the borough council is given power "to make such laws, ordinances, by-laws and regulations, not inconsistent with the laws of this commonwealth, as they shall deem necessary for the good order and government of the borough," and " to regulate the roads, streets, lanes, alleys, courts, etc., and have all needful jurisdiction over the same." It is contended by the appellee that this borough has no express authority to enact ordinances compelling a railroad company to keep a watchman at a railroad crossing, but it has an express grant of power to enact by-laws for certain specified cases and for certain purposes, consequently the corporate power of legislation must be confined to the objects specified. It is conceded that there is no direct statutory authority to sustain such an ordinance, and that it is not a common-law duty of the railroad company to station flagmen or maintain

gates at public crossings. The duty of the railroad company to construct and maintain suitable highway crossings is a continuing one. The character of the crossing must be such that the usefulness of the highway shall not be impaired by the operation of the railroad, and in case of controversy between the railroad company and the municipality as to the reasonably safe condition of the crossing, the railroad company has not the exclusive right to decide the question. Common justice and common humanity demand that preventive remedies should be proportioned to each case under its own peculiar circumstances, namely: the imminency of the danger to the traveling public on the highway, the evil to be avoided and the reasonable means of avoidance. When the commonwealth authorizes the construction of a railroad upon a line which makes it necessary to cross one or more public highways, it authorizes its grantee by a necessary implication to enter and use highways for such purposes, this grant is however subject to two limitations: one in favor of the public for the preservation of the way; the other in favor of an owner, which requires that no additional servitude shall be imposed upon the land covered by the public easement: Jones v. Erie, etc., R. R. Co., 151 Pa. 30. Contributory negligence of persons on the highway may relieve the railroad company from liability in damages, but a municipality is bound to afford reasonable protection to the careless and helpless as well as to the alert. As to this class of persons it was said in Penna. Co. v. Watson, 81* Pa. 294, "It will not do to answer, let the people who go where they have no right, take care of themselves. The police power is enacted not only for those who exercise the proper degree of reflection, but for those who may not. Life is too sacred to place its security on a basis so uncertain. Even the discreet and reflecting make mistakes of judgment as well as of right while infants and others may not judge at all. Therefore the safety of a dense population is to be guarded by the police power in a great city, even though in doing this the power may be called into exercise within the dwellings and lands and the private ways of the citizens. We see not that a railroad company has greater rights within the city than others." The duty to keep the railroad crossing in a reasonably safe condition for public travel is not affected by any consideration of

primary or secondary duties of tort feasors as between themselves. Each is charged with the duty of keeping the highway in a safe condition and each may be liable in damages to a citizen injured by neglect to repair : Gates v. Penna. Railroad Co., 150 Pa. 50. If by reason of circumstances such as deep cuts, short curves, unusual service and frequent trains a public crossing is made more than ordinarily dangerous, it becomes the duty of the railroad company to adopt some adequate means of warning in order to protect the traveling public in the use of the highway, and when a false economy or persistent disregard of duty induces a failure to discharge this duty to the public, there is ample authority under our laws to protect those who have a right to use the highway by requiring the railroad company to do that which of right it should do so as to avoid or minimize the risk which it creates. Many decisions determine it to be the duty of the railroad company to give timely and sufficient notice of the approach of trains at such crossings, while on the other hand it is the imperative duty of the traveler to stop, look and listen for approaching trains before attempting to occupy the crossing. While the law does not point out any particular mode or manner in which notice of approaching trains shall be given, it does require that some suitable and adequate means, adapted to the circumstances, shall be adopted and applied : Philadelphia & Reading Railroad Co. v. Killips, 88 Pa. 405. A railroad company is subject to police regulations as are private citizens, and the speed of trains, sounding of whistles, ringing of bells, safe-guarding of crossings and the like are of equal importance to the railroad company and to persons using the public highway over its tracks. In the absence of legislative restrictions, municipal corporations may control the mode of using the tracks so as to protect the safety of citizens and their property : Dillon on Municipal Corporations, 713, and notes. The fact that there is no direct statutory authority giving this borough authority to require that a watchman be placed at an obviously dangerous crossing is not controlling. To justify the court in declaring the ordinance void its unreasonableness as a police regulation must be clear, manifest and undoubted, so as to be an abuse of discretion on the part of the borough council. The ordinance must be reasonable and must not be

oppressive, and the determination of this question is for the court and not for the jury: Kneedler v. Norristown, 100 Pa. 368; Reimer's Appeal, 100 Pa. 182; Livingston v. Wolf, 136 Pa. 519; McDevitt v. People's Nat. Gas Co., 160 Pa. 367.

The authority for such ordinances has been recognized in Penna. Railroad Co. v. Duquesne Borough, 46 Pa. 223, Township of Newlin v. Davis, 77 Pa. 317, and Penna. Railroad Co. v. Irwin, 85 Pa. 336. The right of a railroad company to operate its tracks across a public highway does not take from the municipality the right of supervision and control over that part of the highway: Elliott on Roads, 599: To hold that the railroad has such absolute control over the highway would place its usefulness and safety at the disposal of the railroad. Each has a legal right to the use of the same ground, with the qualifications that the railroad company has the superior right in occupying the street for the movement of its trains in a reasonable manner. The right to cross the highway with the railroad tracks is conferred by the charter of the company. Telegraph, telephone, electric light, water and gas companies, with the assent of councils, may occupy a part of the public highway, but being there by virtue of a charter right does not relieve them from a reasonable regulation of the use : Springfield Water Co. v. Darby, 199 Pa. 400. The right of a city or borough to impose a reasonable license tax for poles and wires in the streets is valid and necessary for the police power : New Hope Borough v. Telegraph Co., 16 Pa. Superior Ct. 307 s. c., 202 Pa. 532. The limitations of the powers conferred upon municipal corporations are that they must be exercised in a reasonable, lawful and constitutional manner. If these limitations are not transgressed, courts cannot interfere with the ordinances of the municipality, for to councils must be left a reasonable discretion and for the proper and wholesome exercise thereof they are accountable not to the courts but to the people : Philadelphia v. Brabender, 17 Pa. Superior Ct. 331. In the case of telephone, telegraph, gas and water companies but a small part of the highway is occupied, while in the case of a grade crossing the whole surface of the highway at the point of intersection is affected and thus cannot be used by the public while it is occupied by the trains of the railroad company.

We are not prepared to say that under conditions which

would establish the fact that the crossing was manifestly dangerous, through the operation of the railroad company, that the company should not be required to protect those who have the right to use the public highway by a watchman, safety gates or other reasonable appliances.   However, under the evidence adduced in this case it appears that this crossing is not of such a character as to require such protection.   The defendant's railroad track crosses Baltimore avenue in a part of the borough which is practically in the open country.   It is a single track road at this point, on which forty to fifty trains pass every twenty-four hours, and there is practically no evidence of the extent of travel on the public highway.   It is true the railroad bisects a trolley line, and passengers are transferred from one side of the railroad to the other over its tracks.   The schedule of trolley service is not given and there is no evidence of the number of persons using this means of travel.   For the reason that the ordinance is unreasonable under the facts shown by this record, the judgment is affirmed.

BEAVER, J., dissents.

