## Pennsylvania Railroad Company's Case.

213    373
34 SC  394

*Railroads—Safety gates—Boroughs—Ordinance—Act of April 3, 1851, P. L. 320—Powers of borough.*

A borough organized under the general borough Act of April 3, 1851, P. L. 320, has no power to require a railroad company at the latter's expense to erect, maintain and operate safety gates at street crossings in the borough.

Municipal corporations possess and can exercise only such powers as are granted in express words or are necessarily or fairly implied in or incident to those expressly granted, or those which are indispensable to the declared objects and purposes of a municipality.

In the operation of its road and in the running of its cars the judgment of the board of directors of a railroad company, in the absence of statutory provision, is supreme and exclusive. The public safety imperatively requires that there be no division of this great responsibility with others,— not even with municipalities through whose limits railroads may run—for division of it would be the shifting of it in every case of accountability for failure to properly operate the road or run the cars. But while this is true, corresponding duties of the highest order are imposed exclusively upon those having the control and management of railroads. One of these is to adopt and use suitable and adequate means to give notice of approaching trains at grade crossings, which are always more or less dangerous, and the failure to perform this duty is negligence, for the consequences of which those are responsible upon whom it is imposed. What particular means, however, shall be employed to protect the public when using streets or highways at railroad crossings is left to the company operating the road, the law merely demanding and requiring reasonable care in view of all the circumstances. There is no common-law duty on the part of the company to station a flagman or erect gates at a crossing; but the failure of the company to do so is to be considered with other facts in every given case in determining whether the company was negligent. Per BROWN, J.

Argued Oct. 26, 1905. Appeal, No. 77, Oct. T., 1905, by the Pennsylvania Railroad Company, from judgment of Superior Court, April T., 1905, No. 101, affirming order of Q. S. Allegheny Co., March T., 1904, No. 56, dismissing petition to declare void an ordinance of the borough of North Braddock. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Reversed.

Appeal from Superior Court.

The facts appear by the opinion of the Supreme Court, and by the report of the case in 27 Pa. Superior Ct. 113.

*Error assigned* was the judgment of the Superior Court.

*M. W. Acheson, Jr.*, of *Patterson, Sterrett & Acheson*, for appellant.—Boroughs in Pennsylvania have no express power to require railroad companies to erect safety gates and the grant of general powers has been limited to the express powers: Millerstown Boro. v. Bell, 123 Pa. 151.

While the question under discussion, as a question of a borough's power, would seem never to have been before the Supreme Court, that court has indicated that the matter of safeguarding crossings has been confided by the law to the railroad company's discretion: Seifred v. Penna. R. R. Co., 206 Pa. 399 ; Lehigh Valley R. R. Co. v. Brandtmaier, 113 Pa. 610 ; Philadelphia & Reading R. R. Co. v. Killips, 88 Pa. 405.

The following common pleas decisions are, we submit, well considered cases : Archbald Borough v. D. & H. Canal Co., 3 Lack. Jur. 189 ; Hazleton v. R. R. Co., 11 Pa. Dist. Rep. 644 ; Com. ex rel. Boro. of Mount Holly Springs v. R. R. Co., 26 Pa. C. C. Rep. 293.

*William Yost*, for appellee.—At common law corporations have power to make by-laws for the general good of the corporation : Commissioner v. Gas Co., 12 Pa. 318 ; Fisher v. Harrisburg, 2 Grant, 291 ; White v. McKeesport Boro., 101 Pa. 394 ; Sayre Borough v. Phillips, 148 Pa. 482.

The supervision and safeguarding of railroad crossings clearly comes within the police power over streets granted in the act of 1851 : Sayre Borough v. Phillips, 148 Pa. 482.

The whole subject has been previously reviewed by the Superior Court, and the power of boroughs to safeguard railroad crossings recognized in Commonwealth v. Philadelphia, Harrisburg and Pittsburg Railroad Co., 23 Pa. Superior Ct. 205.

OPINION BY MR. JUSTICE BROWN, January 2, 1906 :

The question raised on this appeal is as to the power of the borough of North Braddock to pass an ordinance approved April 7, 1904, entitled " Ordinance No. 133, requiring The Pennsylvania Railroad Company to erect and maintain and operate safety gates at the point where the tracks of said railroad company cross Fourth street in the borough of North Braddock and imposing a penalty for any failure to comply with the provisions hereof." By the first section of the ordi-

nance the appellant is required within sixty days from its approval to erect, maintain and operate safety gates at the point designated in the title, for the warning and protection of those traveling upon Fourth street. By the second section a penalty is provided for failure to comply with the requirement of the first.

It is to be first observed, as is very properly stated by counsel for appellant, that the question is not, (a) Whether the borough may itself erect and maintain gates ; (b) nor whether a given crossing ought to be protected by gates ; (c) nor whether in a given case, a railroad company might be found guilty of negligence in failing to have gates ; (d) nor whether the law ought to compel railroad companies to maintain gates. It is as to the power of a borough to require a railroad company to do a particular thing, which, in the judgment of the borough, the company ought to do at a particular point for the safety of the public in connection with the operation of its road. In the present case the question is as to the power of this borough to require the Pennsylvania Railroad Company to adopt what it regards as proper means for the protection of the public at a designated point crossed by the tracks of the company. It is not pretended that the tracks are not lawfully on the street, nor that the railroad company has not the right to run its cars over them.

In the operation of its road and in the running of its cars the judgment of the board of directors of a railroad company, in the absence of statutory provision, is supreme and exclusive. The public safety imperatively requires that there be no division of this great responsibility with others—not even with municipalities through whose limits railroads may run—for division of it would be the shifting of it in every case of accountability for failure to properly operate the road or run the cars. But, while this is true, corresponding duties of the highest order are imposed exclusively upon those having the control and management of railroads. One of these is to adopt and use suitable and adequate means to give notice of approaching trains at grade crossings, which are always more or less dangerous, and the failure to perform this duty is negligence, for the consequences of which those are responsible upon whom the duty is imposed. What particular means,

however, shall be employed to protect the public when using streets or highways at railroad crossings is left to the company operating the road, the law merely demanding and requiring reasonable care in view of all the circumstances.   There is no common-law duty on the part of the company to station a flagman or erect gates at a crossing; but the failure of the company to do so is to be considered with other facts in every given case in determining whether the company was negligent. Among our cases announcing this rule are: Philadelphia & Reading R. R. Co. v. Killips, 88 Pa. 405 ; Lehigh Valley R. R. Co. v. Brandtmaier, 113 Pa. 610 ; Seifred v. Penna. R. R. Co., 206 Pa. 399.

What is attempted by the appellee in the present case ?   Having no voice in the operation of the appellant's road, it undertakes to do what the common law itself does not do.   It assumes to declare how the railroad shall perform a public duty at a particular point, and would substitute its judgment for that of the board of directors as to what kind of protection shall be afforded at the grade crossing, but with no corresponding responsibility resting on it for the inadequacy of the means which it declares must be adopted.   If it has power to require the appellant to erect safety gates, it has the power to require the adoption, from time to time, of such other means as in its judgment ought to be adopted by the company for the protection of the public at street crossings.   The power for which it contends would be practically unlimited.

That the appellee is attempting to substitute municipal control for that of the railroad company itself at a particular point by declaring just how the duty of the company must be there performed, is too plain for discussion.   If the borough, in its judgment, ought itself to adopt means for the protection of the traveling public at this or any other point within the municipal limits, there is nothing to prevent it from doing so ; but, before it can interfere, as it would by this ordinance, with the railroad company in its performance of its duty to protect the public at the crossing, it must show authority from the legislature to do so, expressly or impliedly conferred.   The power which it would exercise may be a desirable one, but courts cannot recognize it unless it exists.

Municipal corporations possess and can exercise such powers

only as are granted in express words, or are necessarily or fairly implied in or incident to those expressly granted, or those which are indispensable to the declared objects and purposes of the municipality : 1 Dillon on Municipal Corp. (4th ed.), sec. 89 ; 20 Am. & Eng. Ency. of Law (2d ed.), page 1139. Doubt as to corporate power is resolved against its existence, and this is no less true of a municipality than of a private corporation, for the source of the power of each is the same. Answer may be made to this that a municipality, as the representative of the state, has imparted to it inherent police power. This is true, and it is contended that the appellee is but exercising such power ; but the distinction is overlooked that it is not itself, at the expense of the public, undertaking to exercise control over the streets and to protect the public at the railroad crossing, but is attempting to require some one else to do so at its own expense. It has undoubted power to do the former if it will, but, to do the latter through the ordinance which it has passed, authority to enact the same must appear. The use of the street in crossing it is a public use of it by the railroad company having a legislative right to so use it on an equality with any natural person, except as such right may be limited in the grant of it, and the attempted interference with this right must fail, unless the borough can point to its power to so interfere, expressly or impliedly existing.

Among the express powers conferred upon boroughs by the act of 1851, the one sought to be exercised here does not appear. By the first clause of the second section of that act borough authorities are empowered generally " to make such laws, ordinances, by-laws and regulations, not inconsistent with the laws of this commonwealth, as they shall deem necessary for the good order and government of the borough." In the succeeding twenty-five clauses of the same section are found the powers expressly conferred, but the power to pass this ordinance is not one of them. In Borough of Millerstown v. Bell et al., 123 Pa. 151, this court, through PAXSON, J., said : " The general powers referred to in the first section must be confined to the particular subjects referred to in the succeeding sections." Without now committing ourselves to this, it is clear that the good order and government of a borough, referred to in the first clause, are not involved in the ordinance.

The good order of a borough can be preserved and it can· be properly governed, no matter how many railroads cross its streets by legislative permission, and no matter how fast cars may, run over them. We assume this is the clause designated by the Superior Court as the "general welfare clause "— "broad enough," in the opinion of that court, "to cover the municipal legislation complained of." For the reason just given we cannot concur in this.

The ·case of Commonwealth v. Philadelphia, Harrisburg & Pittsburg Railroad Co., 23 Pa. Superior Ct. 205, was relied upon by the Superior Court as authority to sustain the action of the lower court. In that case the Superior Court held that the three following cases were authority for the power of a borough to pass such an ordinance as is now under consideration : Penna. R. R. Co. v. Duquesne Borough, 46 Pa. 223 ; Township of Newlin v. Davis, 77 Pa. 317, and Pennsylvania Railroad Co. v. Irwin, 85 Pa. 336. An examination of. these cases does not justify reference to them as authority for the power claimed by the appellee. In the first, the railroad company, which had become the owner of the canal, succeeded to the duty of maintaining a bridge over it. Having failed to perform that duty, it was held that the borough authorities, as the proper public · officers to look after the public highways, had the right to repair the bridge and to recover the expense of: doing so from the railroad company. In the second, the action was against a township for injuries resulting from a defective bridge. All.that was decided was that it was the duty of the township to properly maintain it. In the third, the railroad company changed the location of a public road, necessitating the building of a bridge, and it was simply decided that, the company having failed to rebuild and repair the bridge, the township could recover the cost of doing so from the company. A fourth case cited by the Superior Court, in Commonwealth v. Philadelphia, Harrisburg & Pittsburg Railroad Co., is Pennsylvania Co. v. Watson, 81* Pa. 293. The reference was intended to be to another case reported in the same volume— Pennsylvania Co. v. James, 81* Pa. 194—in which there appears the language quoted in the opinion of the Superior Court as to the police powers of boroughs. But, turning to the charge of the court below, as found on page 198, it

appears that power had been conferred by the legislature to pass the ordinance which was under consideration. The legislature might, of course, have done so here, but it has not. By the Act of March 7, 1901, P. L. 20, cities of the second class are authorized to enact ordinances requiring the erection of safety gates and the placing of flagmen at the intersection of railroads with public streets, and by the Act of May 23, 1889, P. L. 277, the same authority is conferred upon cities of the third class.

As the borough of North Braddock had no power to pass the ordinance complained of it is declared to be invalid, and the order of the Superior Court, affirming the order of the court below sustaining it, is reversed, the costs below and on both appeals to be paid by the appellee.