Pennsylvania Railroad Company *v.* Driscoll et al.,
Appellants.

Argued October 30, 1939. Before KEPHART, C. J., SCHAFFER, MAXEY, LINN, STERN and BARNES, JJ.

312

314

316

318

320

322

324

328

330

*E. Russell Shockley,* Deputy Attorney General, with him *Claude T. Reno,* Attorney General, for appellants.

*Tom J. McGrath,* for intervenors, appellants.

*John Dickinson,* with him *John B. Prizer, Spencer G. Nauman* and *Henry Wolf Biklé,* for appellee.

PER CURIAM, November 27, 1939:

This appeal is from the decree of the court below holding unconstitutional certain sections of the Act of June 1, 1937, P. L. 1120, commonly known as the Full Crew Act.

When this case was here before (330 Pa. 97), we discussed the legal principles applicable to the Act and the relevant facts as they then appeared. The case was remanded to the court below so that appellants could present facts to show that the regulations imposed by the contested sections, or any of them, bore a reasonable relation to the purpose asserted by the legislature to

be accomplished, appellee having made out a *prima facie* case.

The chancellor conducted extensive hearings whereat more than 4200 additional pages of testimony and exhibits were produced, bringing the total number of record pages to more than 7000, upon which 282 basic findings of fact and a number of conclusions of law were made. These findings expressly refuted the contentions of the defendants, and the chancellor thereupon held that Sections 2, 4, 5, 6, 7 and 8 of the Act had no reasonable relation to the safety of appellee's employees or passengers, or of the public, and that those requirements, being oppressive, unreasonable and arbitrary, were unconstitutional in their application to appellee. Three hundred and forty-six exceptions, including those to the rejection of appellants' requests, were filed. The court en banc sustained all of the findings and conclusions, dismissed the exceptions, and entered a final decree holding the sections above enumerated unconstitutional under the State and Federal Constitutions.

Our inquiry is merely to ascertain whether there was sufficient evidence upon which to base the findings of fact, and whether the law has been correctly applied. We have always held that findings of fact by the chancellor, approved by the court en banc, and supported by competent proof, are binding on this Court.[1]

We have reviewed the entire record with great care, analyzing the exceptions and assignments of error, and are of one mind that the testimony amply supports the findings of fact of the chancellor and the court en banc. These findings are affirmed.[2]

---

[1] *Belmont Laboratories, Inc., v. Heist et al.,* 300 Pa. 542, 546; *White et al. v. Old York Road Club et al.,* 318 Pa. 346, 352; *Campbell et al. v. Bellevue Borough School District,* 328 Pa. 197, 201-202; *Chambley et al. v. Rumbaugh et al.,* 333 Pa. 319, 324.

[2] In finding No. 257, the figures 2,182, $4,423,558, and $4,633,677 are amended to read 2,172, $4,406,482, and $4,616,601, respectively.

The court below found that there was no real, present danger for the Act to correct, nor any potential danger so apparent, or probable, that would call for the expenditure by appellee of the large sums of money required by the Act, and that, in any event, the employment of additional man-power would not obviate or prevent the suppositional hazards. Generally speaking, the accidents reviewed were attributable to human frailties, under circumstances which additional men could, or would, not remedy.

It is urged, however, that, notwithstanding this, the legislature having spoken, the cost of putting the Act into effect should not be considered. We answered this contention in our former opinion (330 Pa. 97, at 105-107) and it is unnecessary here to repeat our discussion. The Act is a regulatory measure, within the class of legislation under which the Public Utility Commission acts. The Commission, as an arm of the legislature, has power to make certain regulations for utilities, but if the cost of compliance therewith is arbitrarily and unreasonably oppressive, such orders will be held void. See *Lehigh Valley R. R. Co. v. Commissioners,* 278 U. S. 24; *Nashville, C. & St. L. Ry v. Walters,* 294 U. S. 405. The fact that the legislature has promulgated such regulations by its own general statute does not exempt them from judicial review.[3] The act of either body is subject to review by the independent judgment of a judicial tribunal. *Ohio Valley Water Co. v. Ben Avon Borough et al.,* 253 U. S. 287.

Appellant further contends that this Act, applying to a particular class, cannot be declared unconstitutional as to one member of the class unless declared unconstitutional as to all. As we pointed out, this Act is

[3] *Seaboard Air Line Ry. v. Blackwell,* 244 U. S. 310; *Penna. R. R. Co. v. Phila. County,* 220 Pa. 100; and see *Com. ex rel. v. Railroad Co.,* 23 Pa. Superior Ct. 205. See also *Stone & Others v. Farmers' Loan & Trust Co.,* 116 U. S. 307, 331; *Relief Electric L., H. & P. Co.'s Petition,* 63 Pa. Superior Ct. 1, 9.

a regulatory measure, promulgated by the legislature instead of the Public Utility Commission. General orders of the Commission may be unconstitutional as to one utility, and constitutional as to others. Moreover, we have held in a number of cases that a statute may operate in an unconstitutional way as to one particular individual or company, as to which it may be declared void, and yet may, as to others still be effective.[4]

Upon the basis of the facts found, the court below concluded that the sections in question violated the Constitution of this State, and enjoined the Public Utility Commission from enforcing them. The Commission, under its general and specific powers, could not, of course, by order or otherwise, put into effect against appellee the requirements of the various sections which are held arbitrary and unreasonable in any of the situations disclosed at the trial, nor could the legislature by indirection have done what is here attempted, and which we have held invalid as to appellee.

The admission of the Form CT-75 Reports, being appellee's records of the various accidents, is, within our decisions, an exception to the hearsay rule.[5] These records are required to be kept by the regulations of the Interstate Commerce Commission, subject to its inspection, and their falsification is made a misdemeanor. They may therefore be considered admissible as official records.[6]

---

[4] *Ward's Appeal*, 289 Pa. 458, 468; *Taylor v. Moore*, 303 Pa. 469, 472; *Turco Paint & Varnish Co. v. Kalodner*, 320 Pa. 421, 435-436; *Commonwealth v. Columbia Gas & Electric Corp.*, 336 Pa. 209. See also *Penna. R. R. Co. v. Phila. County*, 220 Pa. 100, 112; *Jacobson v. Mass.*, 197 U. S. 11, 39; *Village of Euclid et al. v. Ambler Realty Co.*, 272 U. S. 365, 395.

[5] See *Specktor et al. v. Victory Ins. Co.*, 282 Pa. 429; *Ehmling v. D. L. Ward Co.*, 279 Pa. 527; *William Zoller Co. v. Hartford Fire Insurance Co.*, 272 Pa. 386.

[6] *Kalbach v. Philadelphia & Reading Ry.*, 277 Pa. 307; and see *American Life Insurance and Trust Company v. Rosenagle*, 77 Pa. 507; *Laginsky et al. v. McCullough*, 280 Pa. 286, 290-291.

As the decree of the court below strikes down only the sections of the Act noted, there is no need to consider the question of severability. Nor is it necessary to discuss the various factual questions presented as it would involve a lengthy recital of the evidence, which has been so well summarized by the court below in its findings of fact. What impressed us most was the highly speculative possibility of the danger of accidents alleged to exist. The resultant effectiveness of the Act under these circumstances could only be out of all reasonable proportion to the cost involved, which was found to be more than $4,500,000, or, as conceded by appellants, at least, in a request for a finding of fact, $2,900,000.

While we affirm the opinion of the court below, there are some modifications which have been indicated and will be found in the Reporter's Notes. These few inaccuracies do not affect the chancellor's findings of fact or conclusions, and have no bearing upon the decision of the court en banc. It is sufficient for us to hold that Sections 2, 4, 5, 6, 7 and 8 [7] of the Act of June 1, 1937, P. L. 1120, as applied to appellee violate Sections 1 and 9 of Article I, of the Constitution of the Commonwealth of Pennsylvania. Although the court below held that these provisions violated also the Fourteenth Amendment and the Commerce Clause of the Federal Constitution, it is unnecessary for us to pass on those questions in view of the clear violation of our own Constitution.

Decree affirmed at appellants' cost.

---

[7] In appellants' Statement of Questions Involved, it is said that Section 6 requires "two brakemen on trains consisting of empty passenger, express, mail or freight cars," whereas the section relates to: "All other trains not specifically referred to hereinbefore." The court below made no separate finding of fact or conclusion of law with reference to this section and appellants requested none. However, the court's first conclusion of law embraces that section and is amply supported by the evidence appearing in the record in view of the vague and general nature of the requirement.