## Tamaszwicz Estate

*Smith, Cahill & Aker,* for accountant.

*Bernard F. Sheran,* Assistant United States Attorney, for United States.

*Daniel L. Quinlan, Jr.,* Assistant Attorney General, for Commonwealth.

Taxis, P. J., July 29, 1958.—This decedent died intestate on January 9, 1957, a patient in a United States Veterans Administration Hospital. Decedent had been hospitalized in government institutions from shortly after the First World War until the time of his death, and during this period also received a veterans' pension. It is conceded that the entire proceeds of the estate have resulted from an accumulation of this pension, decedent's only source of income.

The parties claiming the balance for distribution in this estate are all residents of Poland, and, pursuant to section 13, rule 1, of the Pennsylvania Supreme Court Orphans' Court Rules, the administrator has filed a report of his investigation to ascertain the existence and identity of any possible heirs of this decedent. As a result of this investigation the administrator concluded that this decedent was survived by a sister, Josefa Tomaszwicz, and by five children of a deceased brother, Jozef Tomaszwicz, all of whom reside in Poland. At the audit of the account the United States Government appeared and made claim to the entire estate for its General Post Fund under the provisions of the General Post Fund Claim Act of June 25, 1910, 36 Stat. 736, 38 U. S. C. A. §17, as amended 38 U. S. C. A. §3920(a).

This statute provides:

"Whenever any veteran . . shall die while a . . . patient in any . . . hospital while being furnished care or treatment therein by the Veterans' Administration, and shall not leave surviving him any spouse, next of kin, or heirs entitled, under the laws of his domicile, to his personal property as to which he dies intestate, all such property, including money and choses in action, owned by him at the time of death and not disposed of by will or otherwise, shall· immediately vest in and become the property of the United States as trustee for the sole use and benefit of the General Post Fund . . ."

The Commonwealth of Pennsylvania also appeared at the audit and claimed the fund under the provisions of section 737 of the Fiduciaries Act of April 18, 1949, P. L. 512, or, in the alternative pursuant to section 1314 of The Fiscal Code of April 9, 1929, P. L. 343, art. XIII, sec. 1314, 72 PS §1314. The latter reads as follows:

"Whenever, on the audit or adjudication of the account of any fiduciary, there shall be and remain in his possession any moneys *not awarded to any claimant or claimants*, or any moneys which shall have been awarded to any claimant or claimants the whereabouts whereof or that of their legal representatives the fiduciary has been unable to ascertain, the fiduciary shall, within sixty days after the date of said audit or adjudication, file, in the court having jurisdiction of his account, a sworn statement of such unawarded or unclaimed moneys, with duplicate, in the same form and manner prescribed in the preceding section of this act, and thereupon proceedings to secure the payment of such moneys into the State Treasury, through the Department of Revenue, to be refunded as hereinbefore provided, shall be had. . . ." (Italics supplied.)

The evidence upon which the accountant relied in concluding that decedent was survived by his sister and the five children of a deceased brother consists of the following:

1. A letter received in 1933 by the then guardian and present administrator of this decedent's estate signed by Jozef Tomaszwicz in which he states that he is a brother of John Tomaszwicz, decedent, and in which he requests the guardian of decedent to send money to help support the Tomaszwicz family.

2. A letter dated August 18, 1957, from the Consulate General of the Republic of Poland, N. Y., addressed to the guardian which states that in response to a re-

quest from the guardian the Consulate advises ". . . that information has been received from Poland indicating that the next-of-kin of the said veteran are his brother and sister . . . Jozef Tomaszwicz and Jozefa Niedzwiedski, nee Tomaszwicz . . ."

3. A letter dated August 14, 1957, from the Veterans Administration in response to a request from the administrator for information. The letter states, in part: "In an application for benefits, dated June 11, 1919, the veteran stated that the beneficiaries for his war risk insurance were Tadensy and Rosi Tamaszewisz. . . . Information on file in the veteran's case folder indicates that his mother, Rozalja Tamazewicz died January 10, 1922, and was survived by the following children: Jozef, Jan, (John) Szymon, (Simon) and Jozefa. It indicates further that the veteran's father, Taden Tamazewicz, also predeceased him."

4. Letters written in 1957 by Vincent Tamaszwicz, alleged eldest son of Jozef Tamaszwicz and also a letter from Jozefa Tamaszwicz, all letters addressed to the administrator and a party in Bridgeport, Pa., named Azierski, containing the information regarding the Tamaszewicz family and enclosing the following documents: (1) Five birth certificates of the alleged children of Jozef Tamaszewicz, the deceased brother of decedent; (2) birth certificates of Jozefa Tamaszewicz; (3) death certificate of Jozef Tamaszewicz. These documents are signed by a party designated as "In charge of the Office of Civil Status Records," and contain the following markings: "Stamp of Militia Administration of the Molodetchenskiy District Civil Status Bureau of Smargonskiy Region." (4) Affidavit of three Polish citizens stating that Semen Tamaszewicz, an alleged brother of decedent, died in 1922.*

---

* These signatures are authenticated by an official designated as "President of the Sel. Soviet" and also contain the above stamp.

In the adjudication the auditing judge intimated that he agreed with the position of the United States Government that the above evidence was insufficient or incompetent to prove heirship or kinship. The correspondence is all hearsay and does not meet the requirements of the pedigree exception to that rule. These requirements were reviewed in Link's Estate (No. 1), 319 Pa. 513, 520, as follows:

"In Sitler v. Gehr, 105 Pa. 577, 596, it was stated, 'I entirely agree that in order to admit hearsay evidence in pedigree, you must, by evidence dehors the declaration, connect the person making them with the family.' Sitler v. Gehr, supra, holds that declarations are admissible if, first, the declarations are made ante litem motam; second, the declarant is dead; and, third, the quotation just noted, to which the court below adds 'there must be some evidence independent of the statement itself that the person making the statement is related to the family about which he speaks.' "

Similarly the birth and death certificates are hearsay and not admissible. With regard to foreign *church* records it has been held that such documents are inadmissible to prove kinship unless authenticated or certified by a United States consul in the particular foreign country (Garrett Estate, 371 Pa. 284, 288) ; furthermore these records, even if properly authenticated, are admissible only to establish the fact for which the entry is made, and cannot be used to establish parentage or other statements included thereon unless it is proved that the records were required to be maintained by the law of the particular foreign country: Garrett Estate, supra; Pennsylvania Railroad Company v. Driscoll, 336 Pa. 310. See also Fiduciary Review, February 1953.

The rationale behind these requirements for the admissibility of foreign *church* records applies with

equal force to the admissibility of foreign *civil* records. In Federal proceedings a statute to that effect controls.

"A copy of any foreign document of record or on file in a public office of a foreign country or political subdivision thereof, certified by the lawful custodian thereof, shall be admissible in evidence when authenticated by a certificate of a consular officer of the United States resident in such foreign country, under the seal of his office, that the copy has been certified by the lawful custodian": Act of June 25, 1948, chapter 646, 62 Stat. 947, as amended, 28 U. S. C. A. §1741.

A similar although rarely cited Pennsylvania statute is to the same effect. See Act of April 27, 1876, P. L. 49, 28 PS §223.

In the adjudication the auditing judge deemed it advisable, on the above state of the record, to direct the administrator to pay this fund into the Treasury of the Commonwealth of Pennsylvania, through the Department of Revenue under the terms of section 1314 of The Fiscal Code, supra. However, on the exceptions it has been urged by the Attorney General that the United States Government is a bona fide claimant under the General Post Fund Claim Act, supra, and that section 1314 of The Fiscal Code applies only where there is no claimant to whom the fund should properly be awarded.

Upon reconsideration it appears that the position of the United States Government is correct and that the auditing judge erred in awarding these funds under the terms of The Fiscal Code. "The burden is always upon the claimant to prove kinship to a decedent by a fair preponderance of the credible evidence . . .": Davis Estate, 365 Pa. 605, 608. The Polish claimants clearly have not met this burden imposed upon them in the face of the claim of the United States Government. Consequently the claim of the United States Government must be allowed. A bona fide claim-

18

ant has appeared and prevailed. There are no un-awarded moneys in the hands of this fiduciary and, therefore the provisions of the section 1314 of The Fiscal Code are inapplicable.

This conclusion does not preclude the Polish claimants from obtaining the proceeds of this estate at a future date. Under the provisions of the General Post Fund Claim Act, supra, persons claiming to be heirs of decedent may at any time within five years after the death of decedent file a claim for the funds.

Accordingly the decree of the auditing judge is hereby vacated and the following order entered.

*Order*

And now, July 29, 1958, the Montgomery County Bank and Trust Company, the administrator, is directed to pay the balance for distribution in this estate to the United States of America, under the General Post Fund Claim Act of June 25, 1910, 36 Stat. 736, as amended, 38 U. S. C. A. §3920(*a*).