# Philadelphia & Reading Railroad Co. *versus* Killips.

1. Where there is extensive travel upon a highway crossing a railroad track it is the duty of the company to give timely and sufficient notice of the approach of trains to such crossing.

2. Where at a public crossing, a railroad company has been in the habit of keeping a watchman to open and close a gate at the approach of trains, it is a question for the jury, whether the company is not chargeable with negligence in leaving the gate open and fastened back and without a watchman.

3. The unnecessary and extraordinary use of a railroad whistle, is negligence.

4. Where it is alleged and denied that the blowing of a locomotive whistle was the cause of an accident, it is for the jury to say, whether the whistle was blown in an unnecessary and extraordinary manner and whether the accident was caused thereby.

88   405
161   32

88   405
186   443

88   405
23 SC  1210

88   405
213   2376

88   405
217   460

32 SC 2 28
32 SC 1 31

[Philadelphia & Reading Railroad Co. *v.* Killips.]

5. Negligence is the absence of care, according to the circumstances, and is always a question for the jury, where there is reasonable doubt as to the facts, or as to the inferences to be drawn from them.

January 20th 1879.  Before SHARSWOOD, C. J., MERCUR, GOR-DON, PAXSON and TRUNKEY, JJ. - WOODWARD, J., absent.

Error to the Court of Common Pleas, No. 2, of *Philadelphia* county : Of July Term 1878, No. 6.

Case by Margaret Killips, the widow of Hugh Killips, and by George and Isabella Killips, his father and mother, to recover damages for the death of said Hugh Killips, alleged to have been caused by the defendant's negligence.

The *narr.* contained two counts.  The first alleged that defendant was engaged in managing a railroad and propelling cars along Ninth street, in Philadelphia, at and near Columbia avenue; that Hugh Killips, the husband and son of plaintiffs, was riding along said avenue, and that as he approached on said avenue defendant was propelling a train along Ninth street, but that defendant's servants made such great noises and shrieks, by blowing the whistle on the engine, that the horse of said Killips was frightened and ran off, and that thereby he was thrown out and so injured that he afterwards died.

The second count alleged that defendant's servants did, by their negligence, startle, scare and frighten a horse which Killips was driving along Columbia avenue, whereby, &c.

- Defendants pleaded " Not guilty."

On the trial before Hare, P. J., it appeared that on May 6th 1875, about 7 o'clock in the evening, deceased, with two companions, was driving in a one-horse wagon down Columbia avenue, going east towards Ninth street.

In April 1875, at the request of the Union Passenger Railway Company, whose track is laid on Columbia avenue in this city, and by an arrangement between that company and the defendant in this suit, a gate was erected at the crossing of Columbia avenue, over Ninth street, at the joint expense of the two companies.  The gate was at the bottom of an incline upon Columbia avenue, and its object was to stop the passenger railway cars in case they could not stop themselves by their brakes.  This gate was operated by the defendant, and from the time it was first put in use, April 14th 1875, until November 18th 1875, was operated between the hours of 6 A. M. and 7 P. M., by the flagman stationed at the crossing. At the latter hour, when, according to the rules of the defendant, the hours of duty of all its flagmen upon Ninth street ended, the gate was locked parallel with Columbia avenue, and left open during the night.

It was not shown that there was any ordinance of the city making it the duty of the company to keep the gate at this point.  The flagman had at 7 o'clock opened the gate for the night and locked it.

[Philadelphia & Reading Railroad Co. v. Killips.]

There is a large factory at the northwest corner of the crossing, which obstructs the view of the railroad from the west when looking towards the north. The view is unobstructed from Columbia avenue looking south. Shortly after the gatekeeper left, on the night of the accident, the deceased and his companions drove down towards the crossing, and stopped on Tenth street to observe whether a train was approaching. Hearing no bell or other warning they proceeded slowly down towards the crossing and when within thirty feet of it an engine suddenly appeared, and the whistle being blown, as it was alleged, the horse became frightened and reared up on the gate and the deceased was thrown out with such violence that he died from the injury received a few days thereafter.

It was daylight, and Killips and his companions knew of the gate and the purpose for which it was used. There was a conflict of testimony in regard to the blowing of the whistle of the engine, the material portions of which are stated in the opinion of this court. The plaintiff's witnesses all alleged that a whistle was blown two or three times by the engine, some of them going so far as to say it was blown wilfully, for the purpose of frightening Killips's horse, and that the horse was frightened by the whistle. The defendant denied this, and called witnesses to show that no whistle at all was blown, but that Killips's horse was frightened by some barrels and whitewashed boards, which had been placed on Columbia avenue, between Ninth and Tenth streets, to guard a trench in that street.

It was not alleged that the train was negligently managed other than in blowing the whistle. It was a violation of the orders of of the company to blow a whistle from Diamond street, a point beyond where the accident occurred, except in case of danger to persons upon the track.

The court affirmed the following points submitted by defendant:

1. That the defendants being authorized. to use steam-engines upon their railroad on Ninth street, in this city, are not responsible for accidents arising from horses being frightened by the noises properly incident to the employment of such engines, or by sight of the engines.

3. That the servants of a railroad company cannot be taken and found by a jury to have been negligent from the mere fact of sounding a whistle upon an engine in the ordinary way. Sounding a whistle, in order to amount to negligence, must have been of an extraordinary character. Although, therefore, even should the jury believe that a whistle was blown upon the engine upon defendant's road, and that Hugh Killips's horse was frightened thereby, the plaintiffs are not entitled to recover, unless the jury also believe from the evidence that the whistle then blown was of an extraordinary and unnecessary character.

4. If the jury should believe that the engineer upon the locomo-

tive blew the whistle for the purpose only and with the intention of frightening Killips's horse, the defendant would not be liable for such an act, and plaintiffs cannot recover upon that ground.

The other points of defendant, with the answers of the court, were as follows :

2. That unless the jury believe from the evidence that the defendent's servants in charge of the engine, which crossed Columbia avenue upon the evening of May 6th 1875, were exercising their right to use and move such engine in an extraordinary way and without due and reasonable care, no negligence can be imputed to them in this respect, and although the jury may believe that the horse behind which Hugh Killips was riding was frightened by the sight or noise of the train approaching in the ordinary way, and that in consequence of such fright the wagon was upset and Killips killed, the plaintiffs cannot recover.

Ans. " I affirm that point, so far as regards the engine itself; that is, an engine used in the ordinary way.   At the same time it does not preclude the jury from determining whether the company was negligent in leaving the gate open and fastened back and without a watchman, although at the times prescribed by the rules of the railroad company."

5. That there is no positive duty upon a railroad company to place flagmen or to erect and tend gates at public crossings, or to keep flagmen standing at or to tend such gates at all hours of the day and night.   Although, therefore, a gate had been erected by the railroad company at Ninth and Columbia avenue, and a flagman was stationed there in the daytime, if the jury believe that the accident in question occurred after the flagman had left for the day and had fastened the gate open for the night, the absence of the flagman and the fact that the gate was open are not evidence of negligence upon the part of the defendant, and the plaintiffs cannot recover upon the ground thereof.

Ans. " Refused."

6. That the evidence in this case does not show that the facts that the gate at Ninth and Columbia avenue was open and that there was no watchman there caused the accident in question, and the same are therefore irrelevant and should not be considered by the jury.

Ans. "Refused."

7. That if the jury believe that the whistle was not blown at all upon the engine crossing Columbia avenue, upon the evening of May 6th 1875, there can be no recovery against the defendants.

Ans. " Refused."

8. That there is no sufficient evidence of negligence upon the part of the defendant's servants, and your verdict should be for the defendants.

Ans. " Refused."

[Philadelphia & Reading Railroad Co. v. Killips.]

The verdict was for plaintiffs for $4500, and after judgment defendant took this writ and assigned for error the above answers to the second, fifth, sixth, seventh and eighth points.

*Thomas Hart, Jr.*, for plaintiff in error.—There is no common-law duty upon a railroad company to station flagmen at public crossings, irrespective of circumstances : Stubley *v.* London & N. W. Railway Co., L. R. 1 Exch. 13 ; Beisiegel *v.* N. Y. Central Railroad Co., 40 N. Y. 9 ; McGrath *v.* Railroad Co., 59 Id. 468 ; Penna. Railroad Co. *v.* Matthews, 7 Vroom 531 ; D., L. & W. Railroad Co. *v.* Toffey, 9 Id. 525 ; Commonwealth *v.* Boston & W. Railroad Co., 101 Mass. 201 ; Bailey *v.* N. H. & H. Railroad Co., 107 Id. 496.

The only qualification of this rule is that such an obligation may become due by reason of the railroad company constructing its road so as to create a peculiar difficulty at the crossing and making it therefore more than ordinarily dangerous.

It is sufficient to say in this case that no question of a duty to maintain a flagman or a gate at Ninth and Columbia avenue was made or submitted to the jury. And even if it had been pretended that the railroad company was bound to keep a watchman there, nothing was shown which would, under the authorities above cited, have justified the submission thereof to the jury.

There was no peculiarity about this crossing, for the fact that buildings prevented a view at Tenth street does not distinguish it from other city crossings.

The placing the gate at the crossing was the voluntary act of defendant, and it should not be held to be negligent because it assumed to put a watchman to attend to it for a portion only of the day. The cases in which companies were held liable for not maintaining, or negligently maintaining gates, were cases in which there was some statutory requirement. If a person undertakes to perform a voluntary act, he is liable if he performs it improperly, but not if he neglects to perform it : Skelton *v.* London & N. W. Railway Co., L. R. 2 C. P. 631 ; McGrath *v.* Railroad Co., 59 N. Y. 468 ; Thorne *v.* Deas, 4 Johns. 84 ; Grant *v.* City of Erie, 19 P. F. Smith 420.

The deceased had no right to interpret the absence of the flagman as an assurance of safety : McGrath *v.* Railroad Co., *supra.*

The blowing of the whistle was not negligence. It was not blown after the horse took fright, and *non constat* that it was not blown to warn the driver of the horse or to try to stop the train. Relation must be had to the circumstances in which the engineer was placed, and the motive for blowing the whistle be determined thereby.

*George Junkin*, for defendants in error.—Where there is extensive travel across a railroad track, the company is bound to exercise a degree of care and diligence commensurate with the risk of acci-

dent: Philadelphia and Reading Railroad Co. *v.* Spearen, 11 Wright 300.

Due warning should be given by the company of the approach of the train: Pennsylvania Railroad Co. *v.* Barnett, 9 P. F. Smith 259; Reeves *v.* Del. & Lack. Railroad Co., 6 Casey 454; Pittsburgh and Fort Wayne Railroad Co. *v.* Dunn, 6 P. F. Smith 280.

When the defendant's railroad is carried across a public highway in such manner and place that those travelling the highway can neither see nor distinctly hear approaching trains, until too late to avoid collision with them, the company is liable for such collision, in the absence of negligence of those injured: Richardson *v.* Railroad Co., 45 N. Y. 846.

It was a question for the jury, whether the circumstances surrounding this crossing were not such as made it the duty of the company to put the gate there. They got permission from the city to do it: Railroad Co. *v.* Hagan, 11 Wright 244.

The public saw the gate there, and recognised it as the company's notice to all comers that a train was coming, and all had a right to suppose that it was only open when it was safe to cross, no matter at what hour of the day or night they drove along Columbia avenue.

The unnecessary blowing of the whistle, under the circumstances, was negligence: Pennsylvania Railroad Co. *v.* Barnett, 9 P. F. Smith 259; Railroad Co. *v.* Dunn, 52 Illinois 451; Railroad Co. *v.* Stinger, 28 P. F. Smith 219; and the question was properly left to the jury.

Negligence is the absence of care according to circumstances: Turnpike Co. *v.* Railroad Co., 4 P. F. Smith 345.

What is negligence, is always a question for the jury, when the measure of duty is ordinary and reasonable care, and where the standard of the degree of care shifts with circumstances: West Chester Railroad Co. *v.* McElwee, 17 P. F. Smith 311, and cases cited in Br. Dig. 1800.

Where there are any controverted facts, the question of negligence is for the jury: Pennsylvania Railroad Co. *v.* Ogier, 11 Casey 60; Holmes *v.* Watson, 5 Id. 457.

Mr. Justice STERRETT delivered the opinion of the court, February 17th 1879.

It is not claimed, in this case, that the deceased was chargeable with contributory negligence; but, it is contended that there was not sufficient evidence to justify the court in submitting to the jury the question of the company's negligence.

The learned judge affirmed, without qualification, the defendant's first, third and fourth points, and thereby instructed the jury, in substance, that the company, being authorized to use steam-engines on its road, was "not responsible for accidents arising from horses being frightened by the noises properly incident to the employment

of such engines, or by the sight of the engines;" that the sounding of a whistle, in order to amount to negligence, must be of an extraordinary character, and although the horse may have been frightened by the blowing of the whistle, there could be no recovery, unless the jury found from the evidence that it was of an extraordinary and unnecessary character; nor would the company be liable if the engineer "blew the whistle for the purpose only, and with the intent of frightening" the horse. These instructions are not complained of, and their effect manifestly was to limit the right of recovery, so far as the whistle may have been instrumental in causing the accident, to an extraordinary and unnecessary use thereof. And, in affirming defendant's second point, he charged that no negligence could be imputed to the company from the exercise of its right to use and run its engine in an ordinary way, and with due and reasonable care; but, at the same time said that the jury were not precluded "from determining whether the company was negligent in leaving the gate open and fastened back, and without a watchman." This latter qualification, and the refusal to affirm the defendant's fifth to eighth points, both inclusive, have been assigned for error.

The jury were thus permitted to inquire whether the whistle, if blown at all, was of an extraordinary and unnecessary character, and whether, under the circumstances, the company was negligent in leaving the gate open and fastened back, without a watchman. The consideration of the jury was, in effect, restricted to these inquiries, and the only question is, whether there was sufficient evidence to justify their submission.

The testimony was conflicting as to whether the whistle was blown at all or not. One of plaintiff's witnesses, describing the occurrence, says, "just then the locomotive came in view from behind the corner of the factory. When those on board saw us they blew their whistle twice or three times. I don't know whether the engineer seeing us caused him to blow, but he did so. It was a whistle sharp and shrill, a good whistle." Another says, the "engineer whistled after he came by the building, to scare the horse or something. I suppose he whistled to frighten the horse. It was a continuous locomotive whistle—nothing peculiar about this. It seemed like three jerks, as if pulled open very sudden." One of defendant's witnesses testifies "there was no occasion to blow the whistle. I heard no whistle. At the time the engine passed, the horse was thirty feet from the track, on the west side of Ninth street." The engineer in charge of the locomotive says, "I never blew a whistle unless something was on the track. I did not blow the whistle, to my knowledge. There was nothing to require me to blow a whistle. I did not blow to frighten the horse; did not blow at all, to my knowledge." Other testimony of the same kind was given on both sides; and the defendant introduced testimony

to show that the bell was rung and that the horse shied at some object in the street.

It is quite obvious that the testimony thus introduced was proper for the consideration of the jury. It was for them to say whether the whistle was blown or not; and if it was, whether, under the circumstances, it was necessary or wholly unnecessary, and sounded in an extraordinary manner without reasonable care, and whether the accident was caused thereby. The company's liability depended on the fact whether the accident resulted from want of proper care on the part of its employees. Negligence is the absence of care according to the circumstances, and is always a question for the jury when, as in this case, there is reasonable doubt as to the facts, or as to the inferences to be drawn from them. Wanton and unnecessary sounding of a locomotive whistle, under certain circumstances, has been held to be negligence: Pennsylvania Railroad Co. *v.* Barnett, 9 P. F. Smith 239; Railroad Co. *v.* Stinger, 28 Id. 219. In the former case the engineer blew his whistle under a bridge while Barnett was passing over, in consequence of which his horses frightened, ran off and injured him. In delivering the opinion of the court, Mr. Justice WILLIAMS characterized this as "an act of gross negligence, and a sufficiently proximate cause of the injury to render the company liable therefor." If the jury found that the whistle was blown, as claimed by the plaintiff, and that, under the circumstances, it was an unnecessary and extraordinary act, what difference is there, in principle, between that case and this? There may be some difference in degree, but not in kind. There was no error in submitting this question to the jury.

Were the facts in relation to the gate at the crossing a proper subject of inquiry for the jury on the question of the company's negligence?

It is not claimed that, irrespective of circumstances, it is a common-law duty of a railroad company to station flagmen or maintain gates at public grade crossings. A road may be so constructed, however, by making short curves or deep cuts at a public thoroughfare as to make it more than ordinarily dangerous, and it may thus become the duty of the company to employ a flagman or adopt other adequate means of warning and protection. Where there is extensive travel on a street or other highway crossing a railroad track, the company, as well as the public, is bound to exercise a degree of care and diligence commensurate with the risk of accident. It is the duty of the company, on the one hand, to give timely and sufficient notice of the approach of trains at such crossings, while on the other it is the imperative duty of the traveller to stop, look and listen for approaching trains before attempting to pass a railroad crossing. While the law does not point out any particular mode or manner in which notice of approaching trains shall be

[Philadelphia & Reading Railroad Co. v. Killips.]

given, it does require that some suitable and adequate means, adapted to the circumstances, shall be adopted and applied.

The road of the plaintiff in error is located on Ninth street and crosses Columbia avenue at right angles. From the point of intersection westerly to Tenth street the grade is considerably ascending. At the northwesterly corner of the crossing a large factory obstructs the view of the railroad on that side to a person approaching from the west until he reaches the house line, about twenty-five feet from the track. In 1875, the gate in question was put up jointly by the railroad company and the Union Passenger Railway Company. According to the testimony of Mr. Kemble, it was so constructed as to swing across Ninth street or across Columbia avenue, so "that when opened on the avenue it was shut on Ninth street—to warn the public and engineer at the same time; it could be swung up along · the curb of Columbia avenue." The gate-keeper was on duty from 6 o'clock, A. M., until 7 o'clock, P. M., at which time the gate was swung back along the southerly curb of, Columbia avenue, and there locked for the night. A few minutes after the gate had been thus locked back and the keeper had left for the night, the deceased and his companions drove down the avenue towards the crossing and stopped at Tenth street for the purpose of ascertaining whether a train was approaching. The intervening houses so obstructed their view that they could not see the railroad on the north side of the crossing. Hearing no bell or other warning, and seeing the gate open, they supposed there was no train approaching, and drove slowly down to the crossing. When within about thirty feet of it, the engine suddenly made its appearance, without previous warning, as was alleged; the whistle was, blown; the horse became frightened and reared up on the gate; the deceased was violently thrown out and sustained the injuries which caused his death. The testimony tended to prove these facts, and it was claimed that they afforded evidence of negligence, proper to be submitted to the jury.

It is evident that the risk of accident at this point was so great that it was necessary to adopt some precautionary measure. A flagman had been previously stationed there, and then the gate was adopted as a better substitute. The ground of complaint is that the keeper was withdrawn at 7 o'clock and the gate left in such a position as to mislead the travelling public—invite them to cross and lure them into danger, and that the deceased was thus misled and injured. If this be so, it would seem that there was a want of that care which, under the circumstances, should have been exercised. We think the learned judge committed no error in submitting the testimony to the jury. It was a question for them whether, in view of all the circumstances, as they found them to exist, the company was not chargeable with negligence in this regard.

There is nothing in any of the other assignments of error that appears to call for further notice.          Judgment affirmed.

SHARSWOOD, C. J., and PAXSON, J., dissented.