# Bracken to use *v.* Pennsylvania Railroad Company, Appellant.

*Negligence—Railroads—Grade crossing—Safety gates—"Stop, look and listen"—Infant.*

In an action to recover damages for the death of a boy twelve years old while riding on a wagon at a grade crossing, the case is for the jury where the uncontradicted evidence of a large number of witnesses showed that the gates were not properly operated at the time of the accident; that they were raised and the horse and wagon permitted to be driven into the crossing when the train was approaching at the rate of forty miles per hour, and so near that the wagon was struck and demolished and the boy killed, although the horse was moving all of the time and apparently the driver had made a reasonable effort to escape with his heavy load, but failed.

Where a wagon is stopped at the safety gates of a grade crossing at a time when the gates were raised, and then proceeds and is struck by a train going at a rapid rate of speed, the question whether the

driver of the wagon should have stopped, looked and listened at another point is for the jury.

In an action to recover damages for the death of a boy twelve years old killed at a grade crossing, the question of the boy's capacity and understanding to be sensible of danger, and to have the power to avoid it, is one of fact to be disposed of by the jury under proper instructions from the court. In such a case the court cannot say as a matter of law that the boy had sufficient mental development and capacity to comprehend the danger so that he would be guilty of contributory negligence, although an adult might have been in the same circumstances.

*Negligence—Parent and child—Action—Parties.*

In an action to recover damages for the death of an infant where a recovery has been had in the name of the father alone, the record may be amended after the trial and verdict, by bringing the mother thereon as a plaintiff.

*Negligence—Infant—School law—Act of July 11, 1901, P. L. 658.*

In an action to recover damages for the death of a boy twelve years old, it is proper for the court to charge the jury that they should assume that the parents of the boy would have been compelled to send him to school until he was sixteen years old.

*Negligence—Railroads—Ordinance—Safety gates—Speed.*

Where a railroad company runs a train at the rate of forty miles an hour within the limits of a city, and fails properly to operate its safety gates at a crossing, and an accident results, it may be shown that no whistle was sounded at the crossing, although an ordinance of the city prohibited the sounding of the whistle.

Evidence that a city ordinance forbade trains to be run at a higher rate of speed than five miles an hour may be considered in ascertaining whether or not the train was being negligently run, but such an ordinance is not in itself evidence of negligence.

The fact that a railroad company operated its road without safety gates at crossings other than the one where an accident occurred does not tend to establish negligence at the place of the accident.

In an accident case where it appears that safety gates were negligently operated at a crossing, it is reversible error for the court to charge as follows: "It has been argued by counsel that these are not safety gates, but rather death traps; why they should be there we are not just clear, because if they are a positive injury they ought to be taken down."

In an action to recover damages for the death of a boy at a grade crossing while riding on a wagon, the testimony was clear that the boy was told not to get on the wagon, and that the driver wanted him to

keep off. The court charged as follows: "It is argued by counsel for the defendant that the boys were forbidden to be on the wagon, but we recollect of no testimony in the case which would warrant such a conclusion." *Held*, to be error.

In such a case where the evidence shows that the boy was twelve years old, and that he had been warned by the driver to keep off the wagon, it is reversible error for the court to charge: "If the jury find that the driver of the wagon upon which the deceased was riding was negligent, the negligence of the driver cannot be imputed to the boy as a guest on the wagon."

A boy twelve years old may have sufficient mental capacity to know that he ought to stop, look and listen before going upon the tracks of a railroad, and he may be guilty of such contributory negligence as to bar recovery on the part of his parents for his death.

Argued May 7, 1906. Appeal, No. 2, April T., 1906, by defendant, from judgment of C. P. Cambria Co., June T., 1903, No. 32, on verdict for plaintiff in case of Hudson C. Bracken for use of W. D. Lloyd v. The Pennsylvania Railroad Company. Before Rice, P. J., Porter, Henderson, Morrison, Orlady, Head and Beaver, JJ. Reversed.

Trespass to recover damages for death of plaintiff's son. Before O'Connor, P. J.

The facts are stated in the opinion of the Superior Court.

Defendant presented the following points :

1. It being admitted that the defendant company operated safety gates on both sides of the railroad, it would not be negligent in running its express train at a speed of forty miles per hour at that point. *Answer :* If it is admitted that the defendant operated safety gates at this crossing and that it would not be negligent in running its train at a speed of forty miles an hour, then we cannot see how, under the circumstances, the defendant can escape the conclusion that it was negligent in this case, because the uncontradicted evidence is that the gates were not operated on this particular occasion ; we cannot affirm the point because the gates were not operated at the time the accident occurred. [1]

2. The decedent not having stopped, looked or listened, nor having requested the driver to do so, for the approaching train, before and while on the crossing, the plaintiff cannot recover, and the verdict should be for the defendant. *Answer :* We

refuse the point because it is not-conceded that the driver even did not stop, look and listen. [2]

3. The evidence being undisputed that the decedent was a strong, healthy and intelligent boy, about twelve years and six months old, and was warned by his parents of the danger at said crossing, therefore it is presumed that he was sensible of the danger and possessed the intellectual power to avoid it and was required to take proper care of his person by stopping, looking and listening before going on the crossing and also before going on track No. 2. *Answer :* We have tried to instruct you fully upon that point and we have said to you that the plaintiff in this case was not bound by the negligence of the driver in his failure to observe the usual rule, but that if the decedent, Robert Bracken, considering his age and intelligence and his knowledge of the crossing, deliberately went into the danger knowingly, that he could have reasonably avoided the danger, in that event the plaintiff would not be entitled to recover. [3]

4. Inasmuch as Alice Bracken, the mother of the decedent, is living and not a party to this suit, the verdict should be for the defendant. *Answer :* We decline to so instruct you. [4]

5. That under the act of April 26, 1855, the plaintiff would be entitled to one-half of the whole damages the parents sustained, if any, inasmuch as the evidence shows the mother of the decedent is living and her rights would not accrue to the plaintiff. *Answer :* We decline to affirm that point. The doctrine as laid down in Phila. Traction Co. v. Orbann, 119 Pa. 37, is to the effect that where an action is brought by a minor to recover for personal injuries, he is not entitled to recover for the losses of earnings during minority, since his father is entitled to them. The act of 1855 says the parents may recover in cases of this kind. In one case that went to the Supreme Court the parents were joined, but the Supreme Court did not pass upon the question because it was not made a special assignment of error. We are of the opinion that the wife is entitled to one-half the damages in an action of this kind, and therefore refuse the point. [5]

6. That the measure of damages, if any, is the compensatory value of the services of the decedent during his minority; less (*a*) The cost of his maintenance and support; also less (*b*) The

period during which the plaintiff was compelled to send the decedent to school in accordance with the Act of July 11, 1901, P. L. 658, which is until his son would be sixteen years of age. *Answer:* With the exception of the last line of this point, we affirm it. The last line assumes a fact which is not a correct statement. The father in a case of this kind is not obliged to send his son to school until he is sixteen years of age. In this case, under the evidence, Robert Bracken was such a boy as his parents would not be required to send to school after he becomes thirteen years of age. With this exception the point as stated is correct, and it states the true measure of damages. [6]

10. If the whistle was not sounded for the Fairfield-avenue crossing it could not be negligence on the part of the defendant. *Answer:* If the gates had been down and prevented Dennison and this boy from going upon the tracks, that might have been sufficient warning—we think it would have been; but if the gates were up, and no signal sounded, we would say, as matter of law, unless there is evidence of some other warning, that the Pennsylvania Railroad was negligent. It is hard to escape the conclusion ·in this case that· they were negligent under any circumstances, and this point admits that there is evidence of other negligences. [8]

The court charged in part as follows:

[It has been argued by counsel that these are not safety gates, but rather death traps; why they should be there we are not just clear, because if they are a positive injury they ought to be taken down.] [12]

[It is argued by counsel for the defendant that the boys were forbidden to be on the wagon, but we recollect of no testimony in the case which would warrant such conclusion.] [13]

[Because the plaintiff is entitled to recover for the loss of services, he is not bound by the rule which requires that the person driving the wagon must be shown to be free from negligence; in other words, there is no evidence in the case which would warrant you in concluding that the plaintiff consented to his son being on this particular wagon, and if the railroad company was negligent so as to fasten upon it responsibility, though the driver of this wagon might also be negligent, his negligence cannot be chargeable to the plaintiff, for the reason

that it has not been shown that the parents of either of the boys consented or acquiesced in their being upon the wagon, and the boys could not be chargeable with the driver's negligence, for the reason that he had entire control over the vehicle.] [14]

[If that is the evidence, then he did stop; if he stopped, the law will presume that he looked and listened, and there being no evidence to the contrary, that would be assumed; that is, his compliance with the ironclad rule would be presumed, and that would take it out of the case.] [15]

[If the jury find that the driver of the wagon on which Robert Bracken was riding was negligent, the negligence of the driver cannot be imputed to the plaintiff, the father of the boy.] [16]

Verdict and judgment for plaintiff for $1,250.15.   Defendant appealed.

*Errors assigned* were (1–6, 8, 12–16) above instructions, quoting them; (7, 10, 11) rulings on evidence referred to in the opinion of the Superior Court.

*H. W. Storey,* for appellant

*Wm. Williams,* with him *W. David Lloyd,* for appellee.

OPINION BY MORRISON, J., October 5, 1906 :

On November 29, 1902, about 9:40 A. M., Robert Bracken, aged twelve years and seven months, was instantly killed at the Fairfield-avenue grade crossing, in the suburbs of the city of Johnstown, by one of the defendant's trains.   The boy was playing near the defendant's tracks, when Andrew Dennison, driving a one-horse wagon, attempted to cross the four main tracks of defendant company, and one of the Cambria Steel Company.   The boy jumped on the rear end of the wagon, although told by Dennison to keep off, for the reason that he had a heavy load of sand which was rather too much for his horse. Two companions got on the wagon with the boy, but they saw the train approaching and escaped, and it appears that they did all that they could to warn Bracken; but he remained on the load of sand, with his back to the locomotive, and was beckon-

ing to his companions to follow him. The express train which killed the boy was going east on track No. 2, and it demolished the wagon. Mr. Dennison and the horse escaped. There were what are termed safety gates at this crossing, but the gateman either negligently, or because no proper warning was given of the approach of the train, raised the gates and permitted a team just in front of Dennison to enter the crossing, and Dennison followed.

Hudson C. Bracken, the father of the boy, brought this action, and recovered a verdict and judgment, without his wife, the mother of the boy, being made a party to the suit, until after the recovery, when her name was brought upon the record by amendment. The verdict in favor of the plaintiff is $1,250.15.

The two prominent questions in the case are, of course, whether the defendant company was guilty of negligence and the alleged contributory negligence of the boy.

The first assignment of error is: "It being admitted that the defendant company operated safety gates on two sides of the railroad, it would not be negligent in running its express trains at a speed of forty miles an hour at that point." This point was refused for the reason that the uncontradicted evidence of a large number of witnesses showed that the gates were not properly operated at the time of the accident; that they were raised and the horse and wagon permitted to be driven into the crossing when the train was approaching at the rate of forty miles per hour, and so near that the wagon was struck and demolished and the boy killed, although the horse was moving all of the time and apparently the driver made a reasonable effort to escape with his heavy load, but failed.

Under the evidence the jury could find that the gates were negligently operated; and this being so, if the train approached at the speed alleged without some warning, it is difficult to understand how the learned court could have affirmed the point. Raising the gate and allowing persons to enter the crossing, in the circumstances indicated by the evidence, was certainly evidence for the consideration of the jury as to the negligence of the defendant: Philadelphia & Reading R. R. Co. v. Killips, 88 Pa. 405 ; Lake Shore, etc., Ry. Co. v. Frantz, 127 Pa. 297 ; Ayers v. Ry. Co., 201 Pa. 124. We cannot sustain the first assignment.

The case of Custer v. R. R. Co., 206 Pa. 529, is not in conflict with the foregoing cases.   In that case the watchman did his full duty and the accident was caused by an exceptional occurrence, viz : the stalling of the team upon the edge of the track and its remaining there for some considerable time.   That case is authority for the proposition that when the company has provided safety gates and operates them properly, trains may pass on grade crossings at a high rate of speed.

The second assignment is: " The decedent not having stopped, looked and listened, nor having requested the driver to do so, for the approaching train, before and while on the crossing, the plaintiff cannot recover and the verdict should be for the defendant." This point was refused.

There was evidence that the wagon on which the boy was riding was standing at the gate waiting for a team to pass when he got on the wagon.   It seems then that the jury could find that the wagon stopped at .the gate, and the presumption of law is that, having stopped, both the driver and the decedent would look and listen before entering upon the crossing.   The additional question of whether or not the driver and the boy should have stopped, looked and listened at another point was for the jury : Cromley v. Pennsylvania R. R. Co., 208 Pa. 445 ;  Ely v. Pittsburg, etc., Ry. Co., 158 Pa. 233.

But in addition to this, the boy was only twelve years old and the court could not say, as a matter of law, that he had sufficient mental development and capacity to comprehend the danger so that he would be guilty of contributory negligence, although an adult might have been in the same circumstances. However, this question is raised by the third assignment and it will be disposed of thereunder.   The second assignment is not sustained.

Third assignment: The decedent being under fourteen years of age could not be held, as a matter of law, guilty of such contributory negligence as would prevent his parents from recovering, and the question of his capacity and understanding to be sensible of danger, and to have the power to avoid it, was one of fact to be disposed of by the jury under proper instructions from the court: Nagle v. Allegheny Valley R. R. Co., 88 Pa. 35 ;  Kelly v. Traction Co., 204 Pa. 623 ;  Crissey v. Hestonville, etc., Passenger Ry. Co., 75 Pa. 83.

The question of whether the boy was guilty of contributory negligence was properly submitted to the jury. The third assignment is not sustained.

The fourth, fifth and ninth assignments raise the question of the failure to join Alice Bracken, the mother of the boy, with the father as plaintiff. We do not see much force in these assignments and the arguments submitted to sustain them. If the case was otherwise properly tried, it is unreasonable to suppose that the recovery was any larger because the father was the sole plaintiff at the trial than it would have been had the mother been joined as plaintiff. After the trial and verdict the record was amended by bringing the mother of the boy thereon as a plaintiff. Let it be conceded that the suit ought to have been brought in favor of the father and mother, under the Act of April 26, 1855, P. L. 309, yet we think the mistake could be cured by amendment.

In Weaver v. Iselin, 161 Pa. 386, the action was brought by a father to recover damages for the death of his infant son, and a verdict and judgment recovered in the court below, and the very question of the right of the father to recover alone was raised by a point before verdict, and when the case was in the Supreme Court an amendment was allowed to bring the wife of the plaintiff upon the record. We think that case disposes of the fourth, fifth and ninth assignments, and they are not sustained.

The sixth assignment raises the question of the measure of damages, and the only point the appellant presses is that the plaintiff was compelled to send the decedent to school under the Act of assembly of July 11, 1901, P. L. 658, until he would be sixteen years old. Under the evidence the court held that the boy came within the provisions of the proviso to the act: " This act shall not apply to any child between the ages of thirteen and sixteen years who can read and write the English language intelligently, and is regularly engaged in any useful employment or service."

Under the evidence we are not prepared to say that the court could assume, or allow the jury to find, that the parents would have been excused from sending this boy to school from the age of thirteen to sixteen years. We cannot see how it could be assumed that if the boy had lived he would have been regu-

larly employed within the meaning of the proviso to the act, during the time in question. The jury ought to have been instructed to assume that the parents would have been compelled to send him to school till he was sixteen years old. The sixth assignment is sustained.

The seventh and eighth assignments relate to the refusal of the court to strike out all the testimony to the effect that the whistle of the locomotive was not sounded for the crossing when the accident occurred, and if the whistle was not sounded for that crossing it could not be negligence on the part of the defendant because of an ordinance of the city prohibiting the sounding of the whistle as a warning at a crossing. We may dispose of these assignments by saying that it is idle to argue that a railroad company can run its trains over a grade crossing in a city at the rate of forty miles an hour and give no proper signal, and at the same time fail to properly operate its gates, and to so operate them that travelers may be deceived and led into danger: Philadelphia & Reading R. R. Co. v. Killips, 88 Pa. 405; Farley v. Harris, 186 Pa. 440; Webb v. Railway Co., 202 Pa. 511; P. W. & B. R. R. Co. v. Stinger, 78 Pa. 219. Under the peculiar facts in evidence we do not sustain the seventh and eighth assignments.

The tenth assignment: " The court erred in admitting in evidence, against the objection of defendant, ordinance No. 136, limiting the speed of trains to five miles per hour within the limits of the city of Johnstown," quoting the ordinance.

In Lederman et ux. v. Penna. Railroad Co., 165 Pa. 118, it is held, as stated in the syllabus: " Evidence that a city ordinance forbade trains to be run at a higher rate of speed than five miles an hour may be considered in ascertaining whether or not the train was being negligently run, but such an ordinance is not in itself evidence of negligence." See also Davidson v. Traction Co., 4 Pa. Superior Ct. 86; Foote v. American Product Co., 195 Pa. 190; Simmons v. Penna. R. R. Co., 199 Pa. 232. We do not sustain the tenth assignment.

The eleventh assignment complains of the court for admitting the testimony of Fred Williams that there were no safety gates at the Bone Mill Crossing. This evidence was objected to as immaterial and irrelevant, and as having no connection with the Fairfield-avenue crossing, where there were safety gates

and where the accident occurred. The court overruled the objection and admitted the evidence. We are not informed how far the Bone Mill crossing was from the place of the accident, but it is conceded to have been another crossing, having no connection with the Fairfield-avenue crossing, and it is not shown to have been within such a distance of the latter crossing that the want of gates there in any manner contributed to the accident. Upon the facts as we understand them this evidence was improper. It is difficult to see that it could have had any legitimate bearing upon the case, and we cannot say that it did not tend to prejudice the jury against the defendant company and lead to the conclusion that the trains were being run in a reckless and careless manner upon a portion of the track remote from the place of accident. That the defendant company saw fit to operate its road without safety gates, at crossings other than the one where the accident occurred, does not tend at all to establish negligence at the place of the accident. If this testimony was proper, why not go on and prove the want of safety gates at a dozen or more other crossings? We feel compelled to sustain the eleventh assignment.

The twelfth assignment is: " It has been argued by counsel that these are not safety gates, but rather death traps; why they should be there we are not just clear, because if they are a positive injury they ought to be taken down." If it were not for the fact that the judgment must be reversed and the case go back for another trial, we might hesitate to sustain this assignment. But we are of the opinion that the court was not warranted in using the language in the connection where it appears in the charge. At best, it served no useful purpose in instructing the jury, and it may have conveyed the idea to the jury that the court considered the safety gates to be death traps. Such language in a charge, in a case of this character, does not tend to lead the jury to a fair and impartial consideration and determination of the questions involved. The twelfth assignment is sustained.

As to the thirteenth assignment, we would probably consider it of too little importance to justify a reversal of the judgment, but inasmuch as the case is to be retried we are disposed to sustain it. The testimony is clear that the boy was told not to get on the wagon and that the driver wanted him to keep off.

The counsel for the defendant had a clear right to call this to the attention of the jury in his argument, but the learned court, by the language quoted in the assignment, probably destroyed, with the jury, the whole effect of the argument upon that point. The thirteenth assignment is sustained.

We are not convinced of reversible error in the fourteenth, fifteenth and sixteenth assignments. When they are considered in connection with the general charge, we are not satisfied that the defendant suffered any serious injury from the language contained therein, and these assignments are not sustained.

The seventeenth assignment is: " If the jury find that the driver of the wagon upon which Robert Bracken was riding was negligent, the negligence of the driver cannot be imputed to the boy as a guest on the wagon." The court affirmed this point and in this we think there is error. If the boy had the capacity and intelligence to appreciate the danger of the crossing, and knew what care and caution he should exercise, and he was careless and reckless and intrusted his safety to the driver of the wagon, and he was negligent, then his negligence might have been imputed to the boy by the jury, and in such case it might bar the plaintiff's recovery: Crescent Township v. Anderson, 114 Pa. 643; Decker v. East Washington Borough, 21 Pa. Superior Ct. 211. In addition, it is a palpable mistake in the court to say in effect to the jury that the boy was a guest on the wagon. All of the evidence on this question is to the effect that the boy was warned to keep off the wagon by the driver, and, therefore, it is not correct to designate him as a guest. The seventeenth assignment is sustained.

Inasmuch as this case may be tried again we desire to state as plainly as we can that the question of the contributory negligence of the deceased boy is a very important factor in this case. If, on another trial, the jury should find that the boy was bright and intelligent and of sufficient mental capacity and knowledge to comprehend the danger at this crossing and to know that he ought to stop, look and listen, and use all reasonable care and prudence to protect himself, and that he failed to do this, then his parents cannot recover because of the negligence of the defendant company in failing, if it did fail, to give a proper signal before reaching the crossing and in failing to

properly operate the safety gates. Our Supreme Court has held in a long line of cases that the negligence of the defendant in the manner above alluded to will not release the traveler from exercising all due care and caution while crossing the tracks of the defendant company. It is, therefore, apparent that the capacity of the deceased boy to be guilty of such contributory negligence as would have prevented his recovery if he had been injured and lived, may also be a complete bar to a recovery on the part of his parents. Therefore this question should be fairly, clearly and impartially submitted to the jury: Greenwood v. Railroad Co., 124 Pa. 572; Dean v. Penna. R. R. Co., 129 Pa. 514; Ihrig v. Erie Railroad Co., 210 Pa. 98.

The assignments of error are all dismissed except the sixth, eleventh, twelfth, thirteenth and seventeenth, which are sustained, and the judgment is reversed with a v. f. d. n.