## Hamill, Appellant, *v.* Christiana Borough.

*Negligence—Road—Absence of guard rail—Borough.*

1. In an action by a woman forty-seven years old against a borough to recover damages for personal injuries sustained while she was driving a buggy on a dark night on a road in the borough, it appeared that at the point of the accident the road was from three to four feet above the adjoining land on one side, from which it was separated by a stone wall, the top of which was on a level with the roadway, and not protected by a guard rail or any barrier. The plaintiff had the reins loosely in her hands, which were lying on her lap. The right wheel scraped against some stones, and the plaintiff called: "Whoa" to the horse, which stopped and began to back. The horse was not frightened and plaintiff made no effort to control him when he began to back, permitting the reins to remain just as they were. He continued to back with the result that the buggy went over the wall, and plaintiff was injured. *Held*, that the question of plaintiff's contributory negligence was for the jury, and that a verdict and judgment for plaintiff should be sustained.

2. It is only where the facts are such that all reasonable minds must draw the same conclusions from them, that the question of contributory negligence is to be disposed of by the court as a matter of law. It is not the province of the court to weigh the evidence or decide between conflicting statements of witnesses, or to decide what inferences should be drawn from uncontradicted evidence, if different minds could fairly come to different conclusions from it.

Argued Nov. 16, 1911. Appeal, No. 157, Oct. T., 1911, by plaintiff, from judgment of C. P. Lancaster Co., April T., 1907, No. 38, for defendant non obstante veredicto in case of Jennie Hamill v. Christiana Borough. Before RICE, P. J., HENDERSON, MORRISON. ORLADY, HEAD, BEAVER and PORTER, JJ. Reversed.

Trespass to recover damages for personal injuries. Before HASSLER, J.

The circumstances of the accident are stated in the opinion of the Superior Court.

At the trial the jury returned a verdict for the plaintiff for $1,000. Subsequently the court entered judgment for defendant non obstante veredicto.

*Error assigned* was in entering judgment for defendant non obstante veredicto.

*C. Eugene Montgomery*, for appellant.—The question of the plaintiff's contributory negligence was for the jury: Bitting v. Maxatawny Twp., 177 Pa. 213; Yoders v. Amwell Twp., 172 Pa. 447.

*W. U. Hensel* and *John E. Malone*, for appellee.—Plaintiff was guilty of contributory negligence: Cage v. Franklin Twp., 11 Pa. Superior Ct. 533; Mueller v. Ross Twp., 152 Pa. 399; Crescent Twp. v. Anderson, 114 Pa. 643; Hill v. Tionesta Twp., 146 Pa. 11; Bailey v. Brown Twp., 190 Pa. 530; Conrad v. Upper Augusta Twp., 200 Pa. 337; Forks Twp. v. King, 84 Pa. 230; Winner v. Oakland Twp., 158 Pa. 405.

Under the pleadings and evidence there could be no recovery by plaintiff because the statement in the case sets forth that the accident occurred on the "approach" to the bridge: Penn Twp. v. Perry County, 78 Pa. 457; Westfield Boro. v. Tioga County, 150 Pa. 152; Francis v. Franklin Twp., 179 Pa. 195; Com. v. Loomis, 128 Pa. 174.

OPINION BY ORLADY, J., March 1, 1912:

The trial of this case in the court below resulted in a verdict in the plaintiff's favor, and in disposing of a motion for a new trial and one for judgment non obstante verdicto in favor of the defendant, the court discharged the first, and made absolute the second. The defendant had asked for binding instructions to the jury in its favor, but this the court refused, and in disposing of the question in an opinion filed, the trial judge concludes that he should have directed a verdict for the defendant for the reason that the plaintiff's contributory negligence precluded a recovery of damages by her.

A review of the facts which are practically undisputed, is necessary to appreciate fairly the decision of the court. The plaintiff, a married woman aged 47 years, with her son aged 10 years, was driving a well-broken and safe family horse in a single seat buggy, from Christiana to Cochranville, on the evening of December 15, 1906, about six o'clock, after it was quite dark. She was familiar with the road and its surroundings. When she was leaving the borough, and approaching a point called Caruthers Mill, the road turned slightly to the left and crossed a covered mill race on the approach to an inter county bridge, which was about 175 feet distant from the mill. At the intersection of the road near the mill there was an electric light suspended from a telegraph pole. We adopt the court's description of the place, "The bridge near where the accident occurred has two wing walls extending about twenty feet westward from the defendant borough. They were raised from three to four feet above the level of the road-

way, westward of these walls, for a distance of about thirty feet, the roadway is from three to four feet above the land adjoining to the south, from which it is separated by a stone wall, the top of which is on a level with the roadway, and is not protected by a guard rail or any barrier to prevent those using the highway from going over it," and, the theory as to how her mishap occurred, is given by the court as follows: "She had the reins loosely in her hands, which were lying on her lap, thus permitting the horse to find the road. When close to the bridge the right wheel scraped against some stones, presumably the wing wall, as there were no other stones there. She called "Whoa" to the horse, which stopped and began to back. There was not the slightest evidence that it was frightened. She made no efforts to control the horse when he commenced to back, permitting the reins to remain just as they were before. The horse continued to back, and when about the middle of the thirty-foot wall, the carriage was backed over the wall. She was thrown out," etc.

Our objection to this is, that it is not the only deduction to be drawn from her testimony, so that a reasonable mind could draw no other inference or conclusion, than that the plaintiff was at fault in what she did under the circumstances. Considerable stress is put on the fact that "She had the reins loosely in her hands, which were lying in her lap," and this conclusion is based on the following: "Q. So that is your nearest recollection, the lines were hanging loose and your hands in your lap? A. I don't know, they were hanging loose. Q. You didn't pull on the lines? A. No, sir. Q. Then apparently it was loose, if anything? A. Yes, sir." The immediately preceding questions are: " Q. While you were coming down from the electric light towards the bridge who was holding the lines? A. I was. Q. Holding the lines with a tight rein, two hands or one? A. The ordinary way of driving. Q. Tell the court and jury. A. I never pull on the lines. Q. Were you holding the lines loose? A. I had them in my hand. Q. In one hand or two hands? A. Both hands. Q. Your hands

were in your lap, were they? A. I don't know. Q. As near as you can remember? A. As near as I can remember I kept them in my lap." From this description the only thing that is without controversy is that she was driving with loose reins and not tight ones, that they were held by both hands lying in her lap, and not with her arms extended and rigid, or, as she puts it—just the ordinary way.

We know of no rule for the successful control of a backing horse. The writer has tried many and failed in each instance. There is nothing to warrant the statement that she "Thus permitted the horse to find the road," yet there are many occasions when it is far better to allow a trustworthy, roadwise horse to find the road in the dark than to attempt to direct it. There is a horse sense exhibited at times which is more reliable than the combined five senses of one who is driving in the dark. When she called "Whoa," the horse responded, but her conduct in that emergency is to be gauged by the experience of persons who have been similarly placed. Nor do we think it conclusively follows that "there was not the slightest evidence that it was frightened." She states: "I couldn't see, I heard the scraping of the wheel and stopped the horse to see what it was. He commenced to back, and backed us down over the embankment." Its continued backing shows the reverse state of mind of the horse. She did not pull on the lines to back the horse. Nor is it at all clear that "the right wheel scraped against some stones, presumably the wing wall, as there were no other stones there." There is no definite evidence as to what stones, or where they were located that scraped the wheels, and it is not to be determined as a matter of law that "they were presumably the wing wall."

It was very dark; she was partially blinded by the electric light and it was for the jury to say whether her manner of driving, and the place she occupied on the road was reasonably careful and prudent under the circumstances. In such an emergency the rule of conduct is a flexible one, and men of equal experience may honestly differ in decid-

ing what is careless and what negligent under such circumstances. For this reason it is the policy of the law that twelve jurymen should weigh, consider and decide on the evidence rather than that one, even though he be a judge, should determine the fact.

The trial judge took the proper view of the case in charging the jury: "Now it does not matter so far as this case is concerned—what the plaintiff did after the wheel struck whatever obstacle, or scraped against whatever she said it did. What she did in an emergency of that kind she is not responsible for, and it would not be contributory negligence. When persons are placed in positions of danger they act according to their best judgment. Their judgment may be wrong, but they must act quickly, and if in that emergency this woman made a mistake in pulling or not pulling the lines, or she made a mistake in saying "Whoa," to the animal, it could not be considered contributory negligence on her part, because it was done as she supposed at the time, or it is presumed she so supposed, for the purpose of saving her from injury or harm." The fact that the learned trial judge finally differed with the majority of this court, in the only indisputable inference or deduction to be drawn from her testimony, shows the necessity of having the conflicting inferences and deductions passed upon by the tribunal fixed by the law for disposing of questions of fact: Beach on Cont. Neg., sec. 162.

It is only where the facts are such that all reasonable minds must draw the same conclusions from them, that the question of contributory negligence is to be disposed of by the court as a matter of law. It is not the province of the court to weigh the evidence or decide between conflicting statements of witnesses, or to decide what inferences should be drawn from uncontradicted evidence, if different minds could fairly come to different conclusions from it, or as stated by Judge HEAD in Portland Ice Co. v. Connor, 32 Pa. Superior Ct. 28: "When conditions group themselves into unusual or varying forms: when the inferences to be

drawn from established facts may change with the responsibility of him who makes them: when the mind hesitates to affirm just what a reasonable man would likely do under the circumstances, then the ascertainment of the legal duty becomes a mixed question of law and fact and must be submitted to the jury:" First Nat. Bank v. Telegraph Co., 34 Pa. Superior Ct. 88; Brace v. Kirby, 43 Pa. Superior Ct. 389.

This plaintiff was using a prominent public highway and the accident was caused by the lack of a proper protection of its sides. Whether its proximate cause was within her control was purely a question of fact under all the evidence and it was rightfully submitted to the jury: Winner v. Oakland Township, 158 Pa. 405; Conrad v. Upper Augusta Township, 200 Pa. 337; Boone v. East Norwegian Township, 192 Pa. 206; Bitting v. Maxatawny Township, 177 Pa. 213; Yoders v. Amwell Township, 172 Pa. 447.

The defendant claims to be exempt from liability because the statement sets forth that the accident occurred on the approach to the bridge, which it was the duty of the county of Lancaster, and not the duty of the defendant borough to maintain. This question was rightly disposed of by the court below, viz.: "The statement fixes the place of the accident on the approach or public road raised to meet the road at or near the wing walls of the bridge, and could, therefore, prove that it occurred on either, but in order to fix liability on the defendant the testimony must show that it occurred on the public road." It was the duty of the county to place a guard rail or barrier upon the approach to the bridge, Hamill v. Lancaster County, 225 Pa. 448, but the evidence clearly shows that the buggy did not go over the stone wing wall guarding the approach of the bridge, which was from three to four feet high, but at a place "on the approach or public road raised from the old public road to meet the road at or about the wing walls to said bridge." If this description was not sufficiently clear, a more specific one could have been secured upon application to the court.

The case was fairly tried on its merits and the judgment in favor of the defendant n. o. v. is reversed. A judgment is directed to be entered in favor of the plaintiff on the verdict as rendered by the jury.